White *v.* Stafford.

———————◆———————

## WHITE *vs.* STAFFORD.

The code has not so changed the law as to allow a husband to examine his wife as a witness, in a case in which she is not a party.

APPEAL from a judgment entered on a verdict. The action was brought for board, care and attendance of the defendant's father, alleged to have been furnished on the express promise of the defendant to pay therefor. On the trial the plaintiff called his wife as a witness on his behalf, to prove such board &c. and the alleged promise. The defendant objected to her as a witness, on the ground that she was

the plaintiff's wife. The court overruled the objection and admitted her; to which the defendant duly excepted.

*Mann & Walker,* for the appellant.

*Humphrey & Parsons,* for the respondent.

*By the Court,* DAVIS, J. The only question in this case is as to the admissibility of the plaintiff's wife as a witness on his behalf. That husband and wife are not admissible as witnesses for or against each other (except in certain cases not necessary now to be referred to) is an elementary rule of the common law. "The husband and wife," says Chancellor Kent, "cannot be witnesses for or against each other. This is a settled principle of law and equity, and it is founded as well on the interest of the parties being the same, as on public policy. The foundations of society would be shaken, according to the strong language in one of the cases, by permitting it." (2 *Kent's Com.* 178, 179.) "It has been resolved," says Lord Coke, "that a wife cannot be produced against her husband, as it might be the means of implacable discord and dissension between them, and the means of great inconvenience." (*Co. Lit.* 6, *b.*) "The reason for excluding the husband and wife from giving evidence for or against each other is founded partially on their identity of interests, and partly on a principle of public policy which deems it necessary to guard the security and confidence of private life even at the risk of an accidental failure of justice." (1 *Phil. Ev.* 77.) "If a wife were a witness for her husband she would be under a strong temptation to commit perjury, and if against her husband it would be contrary to the policy of marriage, and might create much dissension and unhappiness; so vice versa, of the husband." (*Bull. N. P.* 286. 4 *T. R.* 679. 2 *id.* 263.) In *Hasbrouck* v. *Vandervoort,* (5 *Seld.* 153,) Johnson, J. on an examination of all the authorities, came to the conclusion that "the rule of exclusion of husband or

wife where the other is a party or interested in the event, depends merely upon the existence of the relation, and not at all upon the existence in the party offered as a witness of an interest in the event, independent of that which the law attributes to him by reason of the marriage relation." (*See 5 Seld. ubi supra, and cases there cited.*)

This rule of exclusion is equally imperative in both civil and criminal proceedings, and is not founded on that *pecuniary interest* which might always be waived or released. When the authorities speak of "*identity of interest*" as one ground of the rule they undoubtedly intend that *unity of persons and rights* which is the basis of the common law theory of the marital relations. Has the principle so long and well established, been overthrown or changed? There are but two sections of the code—the 398th and 399th—that are claimed to have had any such effect. On referring to them it is well to bear in mind another principle of law, which is that the established rules of the common law are to be changed only by express enactment or necessary implication. Where the code has made, or attempted to make, such change, its own rule of construction is to be applied; (*Code,* § 467;) but where the scope and object of the provision are satisfied by the natural import of its letter, there is no occasion for liberal construction. The 398th section is in these words: "No person offered as a witness shall be excluded by reason of his interest in the event of the action." This provision annihilates, at a blow, every objection to the admissibility of witnesses on the ground of pecuniary interest. So far, therefore, as the rule excluding husband and wife may be supposed to stand on that ground, it is overthrown by this section; but as we have seen by the preceding citations, the rule of exclusion is based upon the broader and higher ground of public policy. It is obvious that section 398 was only intended to remove the disability of pecuniary interest, and not to affect other grounds of exclusion. But it is not necessary to pursue this point; for in the case of *Hasbrouck*

v. *Vandervoort,* above cited, the court of appeals have distinctly adjudicated that this section did not affect the rule under consideration. Section 399 relates exclusively to the "examination of parties to the action. It first provides a general rule for such examination, to wit: "A party to an action may be examined as a witness in his own behalf, or in behalf of any other party, subject to the same rules of examination as any other witness." To this general rule it declares two exceptions, to wit: "except that a party shall not be examined against parties who are representatives of a deceased person, in respect to any transactions had personally between the deceased person and themselves; and except, also, that neither husband nor wife shall be required to disclose any communication made by one to the other." It is quite apparent to my mind that this general rule, which provides that *a party to an action* may be examined in his own behalf, neither abrogates nor affects any other established rule which excludes or admits persons *not parties to the action.* The latter rule is not within the object or letter of this section, the provisions of which are fully answered when they are applied to *all parties real and nominal.* To go farther and say that the section has effected a sweeping change of the established common law rule, in a case not within its letter or spirit, would be in direct violation of the salutary principle that conserves the common law against innovation by mere intendment. But it is said if husband and wife are admissible as witnesses for or against each other when parties to the action, why should not either of them be competent when the other only is a party? The plain answer is that the legislature have seen fit to provide for the former case, and not for the latter. The idea that justice required that when *any* party to the suit was admitted *all* should be, doubtless led to this general rule affecting *parties;* but it did not induce the legislature to enact a general law removing all disabilities, nor indeed any disability, except those of parties to

White *v.* Stafford.

the suit. But it is argued that if this be the true construction, the code has produced the absurd result of admitting a wife or husband where three disabilities exist, to wit, that of being a party, a husband or wife, and that of interest, and excluding them where but one of these disabilities exist.

This *reductio ad absurdum* would be better addressed to the legislature than to the courts, but it really has no soundness. The code does not admit a witness *with three disabilities.* It removes the disabilities themselves, in the special case for which it provides, and it admits the party without them. It has failed to remove the disability in a case for which it does not provide; and the absurdity is in arguing that because it has removed them in the case provided for, it has therefore done so in cases not provided for. The error is in supposing that the legislature, by section 399, intended to declare a general policy or rule which should allow "every person having sufficient capacity and knowledge to give his testimony in relation to any matter in controversy." Had this been the object, respect for that body leads me to believe that it would have been plainly and clearly expressed. These views might be illustrated by reference to other disabilities. A statute declares persons convicted of certain crimes incompetent to testify. Is that statute repealed? Is such a person competent to testify in all controversies because he may perhaps be called when a party to them?

But it is argued that the second exception to the general rule created by section 399, in these words, "and except also that neither husband nor wife shall be required to disclose any communication made by one to the other" operates by necessary implication to abrogate the common law rule in all cases. But this exception is merely a limitation on the general rule of the section. It does not enlarge, but restricts it. It would be a novel construction to hold that an exception which restricts the effect of a general rule, operates by implication to change other rules and create new ones, on a subject not within the provision to which it is an exception.

White *v.* Stafford.

The plain significancy of this exception is fully seen when it is applied to the cases created by the rule which it restricts. Thus where husband and wife are examined as witnesses because they are parties, a limitation is attached to their testimony, to wit, that "neither shall be required to disclose any communication made by the one to the other." This, in my judgment, is the whole effect of the exception.

My conclusion is that the code has not allowed a husband to use his wife as a witness in a case in which she is not a party. Perhaps, since the legislature has of late gone so far to destroy the unity of the marriage relation and change it to a special partnership, or state of legalized concubinage, it ought so to alter the law as to allow husband and wife to become each other's witnesses and to be brought in against each other, in actions like the present; but this should be done, if at all, by plain and express enactment; and such modifications of the criminal law should be made that the wife, when summoned to the witness box by the husband, should have no shield from punishment for perjury, in the legal presumption of coercion. Before such a law is passed I hope the legislature will pause to inquire whether in this respect the *ancient ways* are not best and wisest; whether the marriage relation, which is the foundation of civilized society, is likely to be preserved in its purity, by laws which permit the parties to be constrained, against each other, to disclose whatever transpires in its privacy; and to testify for or against each other under the temptation of gain or the fear of "implacable discord and dissension."

The judgment in this case should be reversed, and a new trial granted, with costs to abide the event.

[ERIE GENERAL TERM, November 17, 1862. *Marvin, Davis, Grover* and *Hoyt,* Justices.]