# COUNTY COURT.

## Eleanor Hall agt. Stephen Hall and wife.

*County courts* having *jurisdiction* in actions to *foreclose mortgages* (see *Arnold agt. Rees*, 18 *N. Y. R.* 57), have a right to try such an action in the ordinary way, and in so doing to entertain and dispose of all the direct and incidental issues properly arising therein, to the same extent in all respects as if the action had been commenced in the supreme court.

Consequently the mortgagor may set up in defence a *counter-claim* to the effect that the plaintiff is justly indebted to him arising upon *contract*, and, therefore, he does not owe the plaintiff the sum claimed to be due by the bond and mortgage ; to such counter-claim the plaintiff may reply, setting up an indebtedness arising upon *promissory notes*, and *money lent and advanced*, and the county court is bound to dispose of these issues, although it would have no original civil jurisdiction to entertain an action brought directly upon the claims involved therein.*

The *wife* of a mortgagor cannot be a *witness for her husband* in an action for *foreclosure of mortgage*, where, although she is a party, no personal claim is made against her, and she does not put in an answer, nor otherwise appear in the action.

The county court has authority by section 30, subdivision 13 of the Code, to *review* its proceedings in an action *after judgment*, and to grant a new trial, &c., notwithstanding the general language of section 323 of the Code, providing that the only mode of reviewing a judgment or order, in a civil action, shall be by *appeal*.

---

*Note.—This case beautifully illustrates the practical working and effect of the decision in the case of *Arnold agt. Rees* (18 *N. Y. R.* 57 ; *S. C.* 17 *How. Pr. R.* 35, *where a brief note was made explaining some views of the constitution on this subject*), which case, it would seem eminently proper, should be reviewed by the court of appeals and overruled. For the anomaly is now presented by the reports of that court, that an action for an *assault and battery* is *not a "special case,"* within the meaning of the constitution, and that the legislature in attempting to confer upon county courts jurisdiction over such an action, had transcended its own powers (*Kundolf agt. Thalheimer*, 2 *Kern.* 593), and that an action for the *foreclosure of a mortgage* situated within the county, *is a "special case,"* within the provisions of the constitution, and the statute (*Code*, § 30) conferring upon county courts jurisdiction of such actions is constitutional. Now one or the other of these decisions is evidently erroneous; for it would seem to be out of the power of any sane mind to give a satisfactory reason why the constitution does not confer the same power upon the legislature to make both actions "special cases," that it does to make but one of them; and so Judge Comstock, in the case of *Arnold agt. Rees*, seems to consider, for he says : " we have now, since the change in the pleadings and practice, no common law actions; and on some future occasion, if the question shall again arise, it may be deemed advisable to inquire whether the constitution necessarily excludes the power of the legislature to confer jurisdiction on those (county) courts over *all the causes of action*, where the appropriate

*Otsego County, October, 1865.*

This was a motion for a new trial made by plaintiff after judgment rendered in favor of the defendant.

Benj. Estes, *for plaintiff.*
E. M. Card, *for defendant S. Hall.*

By the court, E. E. Ferrey, Co. J.  The action was commenced to foreclose a mortgage made by the defendant Stephen Hall, before his marriage ; and although his wife is made a party defendant, no personal claim is made against her, and she neither defends nor appears in the action.  Stephen Hall, who does appear, sets up in his answer as defences :  1st. Payment of the entire claim secured by the mortgage ;  and, 2d.  A counter-claim to the effect that plaintiff is justly indebted to him in a sum much larger than the plaintiff's mortgage, which he alleges should be set off, and judgment rendered in his favor for the balance.

The plaintiff replies to this counter-claim, denying it, and alleges that defendant S. Hall was indebted to her otherwise than upon the mortgage, to an amount much larger than his pretended counter-claim, and she asks that the same may be applied in extinguishment of such counter-claim, if necessary, &c.  Upon the issues thus joined, the parties proceeded to trial before a referee, to whom

remedy was by a common law suit, at the time the constitution was adopted." In other words, the learned judge seems to think that whenever the legislature declares an action at law or a suit in equity a "special case," it becomes one of the special cases of which the legislature is authorized to confer jurisdiction upon county courts.  With great respect, we think such an argument is right in the teeth of the words of the constitution, as it would effectually abolish the word "*special*" (cases) therein mentioned.  Because without the word "special," the legislature would be required to specify and prescribe the cases in which county courts should have jurisdiction; and with it, according to his argument, there would be *no limit* to the power of the legislature thus to specify and prescribe special cases, and thereby expand the jurisdiction of county courts so as to give them original jurisdiction in *all actions,* which would constitute them *general* instead of special cases, in direct violation of the whole aim and intent of the constitution.  (Rep.)

the cause was referred by their procurement, and upon the trial the plaintiff after making proof of her bond and mortgage, rested. The defendant was then sworn, and testified in substance, that the plaintiff boarded with him some two years, under an agreement that he was to be allowed what such board was worth, the same to be applied on such bond and mortgage; and according to his estimate of the value of the board, it, together with some other items of account, more than satisfied the mortgage. He called several witnesses, whose testimony mainly tended to show the worth of such board. Having rested, the plaintiff was sworn, and denied the alleged agreement to pay for the board, or to apply it upon the mortgage. On the contrary, she testified, that the defendant, who was her son, and at the time unmarried, engaged her to keep his house, under an agreement that her labor was to pay for her board; he to furnish provisions, &c. She further testified, that he failed to furnish all that was necessary, and that she in fact furnished provisions to a considerable amount, and did the defendant's work as furnished; and according to her estimate of the value of her board, services, &c., defendant was justly indebted to her in a considerable amount, independent of the mortgage claim. The plaintiff had numerous witnesses sworn, who testified mainly in regard to the value of her board and services, and she likewise offered to prove that the defendant was indebted to her in the sum of $200 or over, on independent claims arising upon promissory notes and otherwise, as set up in the reply, which was objected to for various reasons, and rejected by the referee; and although no grounds are stated for such rejection, I infer from his findings upon the settlement of the case, that the referee was of opinion that this court had no jurisdiction to try or adjudicate upon such claims. He evidently tried the cause and decided it upon the theory that neither himself nor the county court had jurisdiction of the rejected claims, and could only try and decide

upon the validity of the mortgage and the one further question of payment thereof. If in this the referee erred, it is entirely clear that the judgment should be reversed, and a new trial granted. In determining this question I shall accept unquestioned the several decisions of the court of appeals relating to the jurisdiction of county courts. Whatever we may think of the reasoning employed, that fact is undeniable, that that court in *Arnold* agt. *Rees* (18 *N. Y. R.* 57), decide that county courts have jurisdiction in certain foreclosure cases, of which the present action is one, and the law as thus settled does not appear to have been disputed either by the parties to this action or the referee. This action then was properly commenced in this court, and so evidently thought the referee. But admitting this, the referee felt himself limited and circumscribed upon the trial, and driven from the ordinary routine by the supposed constitutional limitation upon the jurisdiction of this court. In this I think he was mistaken, believing that jurisdiction to commence and maintain the action, carried with it the right to try it in the ordinary way, and in so doing, to entertain and dispose of all the direct and incidental issues properly arising therein, to the same extent in all respects, as if the action had been commenced in the supreme court. It is true that an independent action could not have been maintained in this court upon the claims rejected by the referee, because of the want of original civil jurisdiction. (*See Const. art. XI*, § 14; *Kundolf* agt. *Thalheimer*, 2 *Kern.* 593.) The constitution does not say, however, that county courts shall have no original civil jurisdiction in any case; on the contrary, it confers such jurisdiction by necessary implication, if not expressed, in " special cases." The precise language made use of is as follows : " County courts shall have such jurisdiction in cases arising in justices' courts and in special cases, as the legislature may prescribe, but shall have no original civil jurisdiction except in such special cases." It seems clear,

then, that county courts may exercise original civil juris-
diction in certain cases, to wit : special cases prescribed
by the legislature, and we have already seen that this is
a special case, so held by the adjudication of the court of
appeals, in the case first cited.   Hence the ruling of the
referee in excluding plaintiff's claims, cannot be justified
upon the ground that the court had no original civil juris-
diction.   I have said that the cause should have been tried
in this particular the same as if it had been pending in the
supreme court, and this leads to the inquiry what is the
ordinary practice in this particular in that court ?   In
other words, may the mortgagor in an action of foreclosure,
set up in defence a counter-claim to the effect that the
plaintiff is justly indebted to him arising upon contract,
and, therefore, he does not owe the plaintiff the sum
claimed to be due by virtue of the bond and mortgage ?
Sections 149 and 150 of the Code, would seem to be deci-
sive of the question.   The first section, 149, allows a coun-
ter-claim to be set up as a defence in certain actions, and
subdivision 2, of section 150, specifies what a counter-claim
may consist of, and when it may be interposed.   It reads
as follows ,   " In an action arising on contract, any other
cause of action also arising on contract, and existing at
the commencement of the action."   That an action of fore-
closure is an action on contract, and that a counter-claim
of the character set up in the defendant's answer in this
case, was a proper subject of defence, I cite *Agate* agt.
*King* (17 *Abb.* 159), *and National Insurance Co.* agt. *McKay*
(21 *N. Y. R.* 191, 196).   If then, defendant had the right
to set up and prove that he was not indebted upon the bond
and mortgage, for the reason that the plaintiff owed him
upon other and independent demands, it will hardly be
doubted that the plaintiff had a corresponding right to
allege and prove that notwithstanding the defendant might
hold such independent claims against him, yet the same were
satisfied by like claim of an equal amount held by him

against the defendant, and, consequently, the original mort-
gage claim was in full force. The parties to this action,
when pleading, seemed to understand the law to be as
above stated, for all that was offered in proof in those par-
ticulars, was fully set out in the pleadings, and remained
there without objection down to the time of trial. But
upon the trial objections were raised upon both sides, and
successfully upon the part of the defendant, as has already
been shown, for the new matter set up in the reply was
rejected, and notwithstanding proof was received of the
defendant's counter-claim, yet it appears to have been
admitted for the sole purpose of establishing the defence
of payment, or thus much may be inferred from the decision
and findings of the referee. In my opinion, the pleadings
in this case were substantially correct, and authorized by
the Code. There may be some doubt whether the reply
was strictly necessary or proper. (*See Miller* agt. *Losee*, 9
*How.* 356 ; *and Stewart* agt. *Travis*, 10 *How.* 148, *contra.*)
But I do not understand the last case to hold that the proof
might not have been given, even without the reply, in a
case like the present. This supposed want of jurisdiction,
or limited partial jurisdiction, led to some singular rulings on
the part of the referee, for I think I can discover very serious
objections to the manner of disposing of the claims of the
respective parties, adopted by him in this case, and par-
ticularly in splitting up claims contrary to the ordinary
rule, and the well settled principles of law. Yet attempt-
ing to save the rights of the parties from the apprehended
injury to arise from such splitting up, by inserting in the
judgment a mandate that the ordinary and necessary results
of such an act shall not follow its commission in this par-
ticular case, I know of no law or practice which will
authorize a court to allow a party to split his demands, and
yet reserve his rights to recover in another action for the
portion omitted. It is plain to be seen that the adoption
of such a rule would lead to inextricable confusion. Take

this case for an example. The referee decided, and the judgment provides, that the judgment shall not preclude the plaintiff " from a recovery upon any of the claims set up in reply." Looking at the reply, we find that the plaintiff sets up an indebtedness arising upon promissory notes, and money lent and advanced. Now suppose an action to be brought by her for money lent and advanced, against the defendant, might she not prove that she advanced money from time to time, for provisions, &c., while boarding with defendant? the same matters already proved in this action, and proved without objection, which together with her labor, it would seem, was taken into account in determining what plaintiff's board was worth over and above such labor and advances. Suppose further, that in addition to the above, plaintiff should add a claim for those same services, and the defendant under a plea of a former recovery, should introduce the pleadings in this action, and the proof given under such pleadings. What, I ask, would be the proper ruling in such a case? The difficulties to arise from such a state of facts, will suggest themselves to any legal mind, without any particular enumeration of them. But the judgment further provides: " nor shall the same preclude the defendant, Stephen Hall, from any recovery upon any claims he may have against the plaintiff, over and above what is sufficient to satisfy the amount secured by the bond and mortgage." Should the defendant commence an action against the plaintiff to recover this supposed balance, it would seem upon the theory here adopted, that he might declare upon all the matters set up as a defence in this action, and prove them upon the trial; for how could it be possible for him in his complaint or proof, to state or show what particular items the referee allowed in this action, or the particular estimate he put upon each or any. Hence the entire grist would have to go into the hopper and be ground out a second time. The plaintiff (defendant in the supposed

action) would then show the former action, and that the
same matters were before litigated, and insist upon the
same as an entire bar.   Now what should the ruling of the
court be, and what the proper instructions to give the jury,
under the theory adopted in this case, and carried into the
judgment ?   The jury would necessarily be instructed to
pass upon plaintiff's claims, and determine what they all
amounted to in the aggregate.   2d.  To find the amount of
the bond and mortgage in this action, at the time it was
passed upon by the referee.   3d.  To deduct from the plain-
tiff's claims the amount last aforesaid, as of the date afore-
said, and find a verdict for the remainder.   I submit that
this would be the only tolerable method of approximating
to the true balance due, and I also submit that the pro-
ceeding would be but an approximation to justice, unpre-
cedented in the history of American jurisprudence.   It is
something more objectionable than simply splitting up
demands, the effect of which is to multiply actions unne-
cessarily.   But in the supposed case the demand would not
only have been split, but it would be impossible to ascer-
tain where the split was, and the second action might give
to a party the benefit of a claim which another tribunal had
passed upon and allowed, or perhaps legally rejected as
invalid.   Such a result, or a course of legal procedure
subjecting a party to the hazards of such a result, would
be intolerable.   But I need not elaborate.  Enough has
been said to suggest great and unheard of difficulties in
the way of splitting up demands, as was attempted in the
case, and I am confident it can never be successfully or
legally done, and these considerations strongly tend to
show that this court if it has jurisdiction of the action,
must have it complete and sufficient for an entire disposi-
tion of the issues legally arising therein, in analogy with
a well established rule of the late court of chancery, that
when jurisdiction was once obtained of an action for the
purpose of discovery, and the discovery was effectual, that

became a sufficient foundation upon which the court might proceed to grant full relief, and in this way only can complete justice be administered, and the many difficulties suggested be avoided.

I think the referee erred also, in allowing the defendant's wife to be sworn as a witness, against the objection of the plaintiff's counsel. It is true she was a party, but only nominally so; with the summons was served upon her a notice of the object of the suit, and that no personal claim was made against her. She put in no answer, nor did she otherwise appear, consequently there was no issue in regard to herself, individually, respecting which she could testify. It has been time and again decided that she cannot be a witness for her husband. (*White* agt. *Stafford*, 38 *Barb.* 419; *March* agt. *Patten*, 3 *Barb.* 506.) She may be a witness in her own behalf (*Shoemaker* agt. *McKee*, 19 *How.* 96), in a proper case. But here no issue was made in regard to her, and she could not have possibly testified in her own behalf. She did testify, and gave material evidence upon the issues affecting her husband only. Hence she was made a witness in violation of the well settled rule aforesaid, which was error.

I am inclined to think the referee erred in another particular, to which I will simply refer. He finds as matter of fact, that cotemporaneous with the execution of the bond and mortgage, a parol contract was made between the parties, to the effect that plaintiff should be paid in board instead of money, as expressed by the terms of the bond and mortgage. He further found the plaintiff did board with defendant, without any modification of that contract in the meantime, and notwithstanding the parties never made any other application of such board upon the bond and mortgage, yet he holds that the parol contract was valid, and that the law would so apply the board, against the denials and protests of the plaintiff. It seems to me that the written contract could not be thus contra-

dicted or modified by a cotemporaneous parol agreement, but as before suggested, I have given the question no particular examination, not deeming it important to a decision of the case, inasmuch as I must direct a reversal of the judgment for reasons above specified. The clerk will, therefore, enter an order reversing the judgment, and directing a new trial, costs to abide the event. The order will also vacate the previous order of reference. I direct this, supposing it would be the wish of both parties.

It now occurs to me that the defendant's counsel objected preliminarily, that the county court had not the power to review the proceedings in this action after judgment, and that the only proper method of doing so was by an appeal to the supreme court at general term, as provided for by chapter 3, title 11, of the Code. The peremptory and explicit language of section 323, was referred to as proving that there was no other mode of review. The argument drawn from this section is not only specious but legitimate, yet I am compelled to disregard it, for I find that section 30, enacted expressly to confer and define the jurisdiction of this court, holds this explicit language (*See sub.* 13.): " To grant new trials, or affirm, modify, vacate or reverse judgments in actions tried in such court, upon exceptions or case made, subject to appeal to the supreme court." By a familiar rule for the construction of written instruments, I am directed to give effect, if possible, to both these sections above named, which, it must be admitted, are apparently in conflict, and I do so by holding that the language employed in section 323, was used in reference to appeals generally, and the radical change which it was designed to effect by entirely abolishing all writs of error in civil cases. When read in connection with the provisions of chapter 3, aforesaid, which treats of appeals to the supreme from inferior courts, I hold that it means that all such appeals shall be in the words there pointed out, and in none other. I do not believe that the legislature designed by their later

provisions in the Code (later in their order), to reverse or modify the express provisions of subdivision 13, section 30, aforesaid quoted, giving this court jurisdiction to review the judgment in terms.

In conclusion, it may not be amiss for me to say, that the questions above treated of, particularly those respecting the jurisdiction of this court, are, in my opinion, important, interesting, and novel withal, and I feel no little degree of diffidence in deciding them, notwithstanding it may not be apparent from the tone of my argument. I am compelled to decide both questions reasoning from analogy, for counsel have furnished me with no adjudicated cases upon either point, and I know of none, although the present constitution and Code of Procedure, under which these questions arise, have been enacted many years.