GEORGE S. GAINES, FRANCIS S. LYON AND HIS WIFE, SARAH LYON, JAMES M. DAVENPORT AND HIS WIFE, ALETHAN DAVENPORT, GOODMAN G. GRIFFIN AND HIS WIFE, WILLEY ANN GRIFFIN, GEORGE FREDERICK GLOVER, ANN GAINES GLOVER, LOUISA DAVENPORT GLOVER, MARY THOMPSON, AND MARY A. GLOVER, APPELLANTS, *v.* ISAAC W. NICHOLSON, POWHATAN B. THERMOND, LEWIS B. BARNES, JOHN T. MOSELEY, S. M. GOODE, AND JOHN HILMAN.

Whilst an ejectment suit was pending to try the legal title to a tract of land in Mississippi, the defendants filed a bill on the equity side of the court, praying for a perpetual injunction, upon the ground that the plaintiffs had obtained a patent from the United States by fraud and misrepresentation.

But the fraud is not established by the evidence, and therefore the bill must be dismissed, and the parties remitted to the trial at law.

Where there are reservations, in Indian treaties, of specific tracts of land, which are afterwards found to be the sections set apart for school purposes under a general law, the reservees have the better title. They hold under the original Indian title which the United States confirmed in the treaty.

But where the reservee claimed under a float, no specific tract of land being designated for him in the treaty, this court abstains from expressing an opinion, that being the legal question pending in the court below.

THIS was an appeal from the Circuit Court of the United States for the Southern District of Mississippi.

It was an appeal from a decree by the equity side of the court, granting a perpetual injunction upon the appellants, who were plaintiffs in an ejectment suit then pending on the law side of the court.

In the second article of the supplement of Dancing Rabbit Creek treaty (7 Stat. at Large, 340), made on the 27th of September, 1830, there is this reservation :— " Also, one section is allowed to the following persons, to wit, Middleton Mackey, Wesley Train, Choclehomo, Moses Foster, D. W. Wall, &c., to be located in entire sections, to include their present residence and improvement, with the exception of Molly Nail and Susan Colbert, who are authorized to locate theirs on any unimproved unoccupied land."

On the 27th of August, 1832, D. W. Wall, one of the reservees, assigned all his right and title under the treaty to George S. Gaines and Allen Glover, who procured a patent for the sixteenth section to be issued to them, in pursuance of this claim under the treaty, by the President, on the 7th of December, 1838.

In the year 1841, George S. Gaines, Francis S. Lyon, and the heirs at law of Allen Glover, instituted an ejectment against John Hilman, who was the tenant in possession under the trustees of the school lands.

In 1842 these trustees filed a bill on the equity side of the court, from which the following are extracts: —

"Humbly complaining, your orators would respectfully show unto your Honors, that your orators, Isaac W. Nicholson, Powhatan B. Thermond, Lewis B. Barnes, John T. Moseley, and S. M. Goode, are the trustees of the schools and school lands reserved by the acts of Congress for the use of schools in township twelve, range eighteen east, situated in the County of Kemper, in the State of Mississippi. They would further show unto your Honors, that section sixteen, in said township twelve, range eighteen east, was reserved, by the acts of Congress, for the use of schools in said township, and, being so reserved, your orators took possession of the same, and leased it to your orator, John Hilman, who went into possession of said tract of land prior to the 27th day of March, 1841, and has continued in possession ever since until this time.

"Your orators would further show unto your Honors, that on the 27th day of March, in the year 1841, an action of ejectment was instituted, on the law side of this honorable court, by John Doe, lessee of George S. Gaines and Francis S. Lyon, and of the heirs at law of Allen Glover, deceased, against your orator, John Hilman, for the recovery of said section sixteen, and to dispossess and eject your orators therefrom, which suit is still pending undetermined in said court.

"Your orators would further show unto your Honors, that by virtue of the second article of the supplement of Dancing Rabbit Creek Treaty, entered into on the 27th day of September, 1830, between the United States and the Choctaw tribe of Indians, certain portions of land, situated within the Territory ceded by the said Indians to the United States, were reserved to divers members of said tribe of Indians, and, amongst others, a section of land was reserved to David W. Wall, in the following words, to wit: — 'Also, one section is allowed to the following persons, to wit, Middleton Mackey, Wesley Train, Choclehomo, Moses Foster, D. W. Wall, &c., to be located in entire sections, to include their present residence and improvement, with the exception of Molly Nail and Susan Colbert, who are authorized to locate theirs on any unimproved unoccupied land.'

"Your orators would further show unto your Honors, that on the 27th day of August, in the year 1832, the said David W. Wall, by deed of that date, bargained, sold, and conveyed, to George S. Gaines and Allen Glover, all the right, title, interest, and claim of him, the said David W. Wall, in and to a certain reservation of one section or six hundred and fifty acres

of land, made and granted to him, the said David W. Wall, under and by virtue of the provisions of a treaty made and concluded between the United States of America and the Choctaw tribe of Indians, at a place called Dancing Rabbit Creek, in said nation, in the month of September, 1830.

"Your orators would further show unto your Honors, that the said George S. Gaines and Allen Glover, deceased, falsely and fraudulently pretending and representing to the President of the United States that the said David W. Wall, at the date of said treaty, resided upon said section sixteen, in the township and range aforesaid, and had his improvement thereupon, and that they had located the reservation of said Wall upon the same on the 7th day of December, in the year 1838, procured a patent to be issued to them, conveying to them the said section sixteen, in township twelve, range eighteen east.

"Your orators would further show unto your Honors, that at the date of said treaty the said David W. Wall did not reside, nor had he any improvement, upon said section sixteen, as aforesaid, but resided at a long distance from the same, and had no right or title, claim or interest whatever, in said section of land, which had been reserved, as your orators distinctly and positively aver, for the use of schools in the State of Mississippi, by the laws of the United States.

"Your orators would further show to your Honors, that the said Gaines and Glover were so well aware that they had no right to the said section of land, by virtue of their purchase from the said Wall, that they located the claim of said Wall at one time, as your orators have been informed and believe, upon another section of land near Mayhew, in Oaktibbeha County, but finding that their claim to said last-named section would be disputed, they, in the technical language of land-mongers and speculators, lifted the same, and laid it upon said section sixteen. Your orators would further show unto your Honors, that, by virtue of the patent thus falsely and fraudulently obtained, they have been advised that the said Gaines and Allen Glover, deceased, obtained the highest and best legal title to said section sixteen, when, in equity and justice, they have no title thereto, but the same belongs to your orators, as trustees and tenant of the schools and school lands, as aforesaid."

The bill then proceeded with the usual interrogatories, prayed for a temporary injunction, and afterwards a perpetual one.

A temporary injunction was granted.

The respondents, in their answer, set forth the circumstances of the treaty, averred that the United States were incapable of

making any grant of land which was reserved by the treaty, and denied the alleged fraud in the following manner : —

" These respondents, further answering, say that the said George S. Gaines and Allen Glover, deceased, never did, jointly, nor did either of them severally or separately, falsely pretend and represent to the President of the United States that the said David W. Wall, at the date of the treaty, resided upon section sixteen, in the township and range aforesaid, and had his improvement thereupon ; no such pretence was ever set up or representation made to the President of the United States, or any one else, by the said George S. Gaines, or Allen Glover, in his lifetime, or either of them.   A reference to the record of the executive department of the government, or even to the published documents relating to the public lands, would have relieved the complainants from an allegation so utterly false and unfounded."

To this answer there was a general replication.

Some testimony was taken bearing upon the points of Wall's residence, age, &c., but none touching the fraudulent representations alleged to have been made in the procurement of the patent.

On the 18th of November, 1845, the Circuit Court passed the following decree.

" Be it remembered, that this cause came on to be heard at the present term, before the Honorable Samuel J. Gholson, judge, &c., presiding, upon the bill, answers, exhibits, agreements, and proof in the cause, and upon argument on both sides ; and now, at this day, the court being sufficiently advised, and because it appears to the satisfaction of the court that the complainants are entitled to the relief prayed for by them, it is therefore ordered, adjudged, and decreed, and the court doth hereby order, adjudge, and decree, that the judgment at law in the pleadings mentioned, and all attempts to enforce the same, be, and the same is hereby, perpetually enjoined ; and, also, that the said defendants be, and they are hereby, perpetually enjoined from ejecting and turning out, or from commencing any other or further suit to eject and turn the said complainants, or their successors in office, out of the possession of the section of land in the pleadings mentioned, to wit, section sixteen, in township twelve, range eighteen east, in Kemper County.   It is further ordered, adjudged, and decreed, and the court doth hereby order, adjudge, and decree, that the defendants shall, within sixty days from the date of this decree, by deed, in fee simple, without warranty, convey, quitclaim, and relinquish to the complainants and their suc-

cessors in office, as trustees of schools and school lands, all the right, title, claim, and interest which they, the said defendants, or any of them, have in and to said section of land ; and in default of such conveyance being made by said defendants in the time aforesaid, then the clerk of this court be, and he is hereby, appointed a commissioner to carry into effect that portion of this decree directing said conveyance. It is further ordered, adjudged, and decreed, that the defendants shall pay all the costs of this suit. This ordered, adjudged, and decreed, this 18th of November, 1845."

From which decree the defendants pray an appeal to the Supreme Court of the United States, which is granted.

The cause was argued by *Mr. Lawrence* and *Mr. Badger,* with whom was *Mr. Inge,* for the appellants, no counsel appearing for the appellees.

The counsel for the appellants made the following points :—

1. That by the treaty the whole cession passed to the United States, subject to the reservations mentioned in the treaty, which were in the nature of exceptions out of the grant, and, when actually located according to the treaty, took effect by relation from its date, so as not to be liable to any disposition by the United States; and consequently, if the sixteenth section was rightfully selected as the location of Wall's reservation, the same could not, by any law of the United States, be set apart or appropriated to any other purpose ; and if such appropriation in fact was made or attempted, which is not admitted, it was void as against Wall's claim.

2. That, according to the true interpretation of the treaty, each of the persons named in the above-quoted clause of the supplement was entitled to a section, whether he had a residence or not. The fact of a residence was immaterial to the right; — which was absolute, independently of residence, — and only served to determine the location where the party had a residence; those without residences, and the two persons specially excepted out of the restriction imposed by the residence, having necessarily a right to make locations on any unimproved and unoccupied land. Otherwise, the main purpose of the clause would be disappointed, contrary to its true intent upon sound rules of construction. But if this were doubtful upon the clause itself, our interpretation must still prevail ; because by the eighteenth article of the treaty (7 Stat. at Large, 336) it is expressly declared and agreed, that even well-founded doubts shall be resolved in its interpretation in favor of the In-

dians. And therefore, it not appearing that Wall had any residence of his own, but it being, on the contrary, proved that at the date of the treaty he was an unmarried man, without any family, and residing in the family of another person, the location of his reservation upon the sixteenth section was well and rightfully made, and the patent properly issued.

3. If Wall's reservation was not rightfully located upon the said sixteenth section, yet the appellees were not entitled to relief. Their case is, in substance, that Gaines and Glover, by representing to the President of the United States that Wall had a residence in that section, fraudulently procured the grant to issue, &c. But all such representations are denied by the appellants, and no proof is offered to sustain the charge. The appellants aver, and the fact is, that the location was made and the grant issued upon a representation of the truth as they understood it, and with full knowledge of the facts by the officers of the government. So that, if Wall was not entitled so to locate, the case was one of mere error on the part of the government in the interpretation of the treaty, and not a fraudulent contrivance of the party to prejudge or mislead those officers. And therefore the case, as it appears, would give no ground of relief if truly stated in the bill; and if it would, yet that case does not sustain the bill as framed.

And upon the whole, it will be insisted that the decree is erroneous, and ought to be reversed and the bill dismissed.

The following authorities will be relied on.

On the first point, Doe *v.* Beardsley, 2 McLean, 412; Stockton *v.* Williams, 1 Douglass, (Mich.) 547; Act of April 21, 1806 (2 Stat. at Large, 401, sec. 6); act of March 3, 1803 (2 Stat. at Large, 233, sec. 12); Opinion of Attorney-General (Ex. Doc. 2 Sess. 26th Congress), 1419.

On the second point, Euchela *v.* Welsh, 3 Hawks, (N. C.) 155. In connection with the provisions of the treaty, Opinion of Attorney-General, 2 Land Laws, 188, 205.

On the third point, Opinion of Attorney-General, 2 Land Laws, 206.

Mr. Justice NELSON delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of the United States for the Southern District of the State of Mississippi.

The bill was filed by the appellees in the court below against the defendants, to enjoin proceedings in an action of ejectment brought to recover possession of the sixteenth section of

township twelve, range eighteen east, County of Kemper, State of Mississippi.

By the twelfth section of an act of Congress, passed March 3, 1803, entitled "An act regulating the grants of land, and providing for the disposal of the lands of the United States south of the State of Tennessee" (2 Stat. at Large, 229), the sixteenth section in each township was reserved, and appropriated to the support of schools within the same. And by the sixth section of an act of Congress, passed April 21, 1806, entitled an act in addition to the act aforesaid (2 Stat. at Large, 401), it was provided, that whenever the sixteenth section should fall upon land already granted by Congress, or claimed by virtue of a British grant, the Secretary of the Treasury should locate another section in lieu thereof for the use of schools within the township. And by an act of Congress, passed January 9, 1815, entitled "An act to provide for leasing certain lands reserved for the support of schools in the Mississippi Territory" (3 Stat. at Large, 163), it was provided, that the county court of each county in the Territory should appoint agents, who were empowered to lease these reserved sections for the purpose of improving the same, or for an annual rent, as they might think best; and to apply the proceeds to purposes of education within the township.

The act also provided for laying out the sections into convenient farms, of not less than one hundred and sixty, nor more than three hundred and twenty acres each; for the removal of intruders and trespassers; and also for the punishment of all persons cutting timber or committing other waste upon the tract.

The last section provided, that the leases granted by virtue of the act should be limited to the period of the termination of the Territorial government, and should cease after the 1st of January next succeeding the establishment of the State government.

It is admitted that the appellees are the trustees of schools and school lands in township No. 12, duly elected and qualified under the laws of the State of Mississippi; and that they are charged with the care and management of the same (How. & Hutch. Dig., p. 125, *et seq.*); and also, that John Hilman, the defendant in the ejectment suit, was in possession under a lease from the said trustees.

They had taken possession of the section as early as 1834. The suit in ejectment was brought in 1841.

The premises lie within the territory formerly belonging to the Choctaw nation of Indians, and which was ceded to the

United States, by treaty, at Dancing Rabbit Creek, 27th September, 1830 (7 Stat. at Large, 333).

By the supplementary articles of that treaty (p. 340), certain reservations were made to Indians by name, and among others the following : — "Also, one section is allowed to the following persons, to wit, Middleton Mackey, Wesley Train, Choclehomo, Moses Foster, D. W. Wall, &c., to be located in entire sections, to include their present residence and improvement, with the exception of Molly Nail and Susan Colbert, who are authorized to locate theirs on any unimproved unoccupied land."

D. W. Wall, one of the reservees, on the 27th of August, 1832, assigned all his right and title under the treaty to George S. Gaines and Allen Glover, who procured a patent for the sixteenth section to be issued to them, in pursuance of this claim under the treaty, by the President, on the 7th of December, 1838.

The former, and the heirs of the latter, compose the plaintiffs in the ejectment suit in the court below, claiming under the patent ; and the defendants in the bill filed to enjoin that suit by the school trustees, claiming under the acts of Congress above referred to.

The court below granted a preliminary injunction on the filing of the bill, staying the proceedings at law, and on the final hearing decreed a perpetual injunction ; and also, that the defendants relinquish all their right and interest in the section to the school trustees and their successors in office.

The clause in the treaty reserving to Wall, among others, a section of the land ceded, upon a strict construction of its terms, would seem to confine the reservation to a tract, not exceeding a section, on which he resided and had made improvements at the date of the treaty ; but a more liberal construction has been properly given to the clause by the officers of the government, and which was inculcated by the eighteenth article of the treaty itself, by which the reservee is allowed a section, although not a resident at the time, and without having made any improvements upon the particular tract. In cases of residence and improvements, the location must be such as shall include them.

Wall, it seems, was a minor, and resided with his father at the date of the treaty, and therefore was not within its terms, so that locality could be given to any particular section by a reference to residence or improvements. But under the liberal construction mentioned, the right to a section, notwithstanding, existed, — a right, however. to no particular tract or sec-

tion, but at large, to be located upon some portion of the ceded territory, — what, in common parlance, is denominated a float.

The deed to Gaines and Glover does not profess to convey any particular section, but only his right, generally, to that amount of land reserved to him under the treaty. A location, therefore, became necessary before the issuing of the patent by the President.

The bill charges that the grantees, Gaines and Glover, in order to induce the President to issue the patent to them for the sixteenth section of township No. 12, which, it is claimed, had been appropriated by the acts of Congress already referred to, for the use of schools, falsely and fraudulently represented that Wall resided upon the same at the date of the treaty, and had made improvements thereon; thus bringing the application for the particular parcel of land within the strict terms of the treaty, and presenting a case upon which the right to it was, confessedly, paramount to any that could be pretended in the State or township, as a school reservation.

This is the ground set forth by the complainants upon which to invoke the equitable interposition of the court to set aside and annul the patent, and remove the encumbrance from their title, and to stay the proceedings at law. And undoubtedly, if the facts thus charged have been established by the pleadings and proofs, a right to such equitable interposition for the relief sought has been made out, and the decree of the court below should be upheld.

But, on looking into the answer and proofs in the record, there does not appear to be any evidence of the fraud or imposition alleged; nor any thing to rebut the presumption, which we must assume till the contrary is shown, that the patent was issued with a full knowledge of all the circumstances upon which the complainants rely to invalidate it. Fraud is not to be presumed, and the burden, therefore, lay upon the complainants to establish it; and having failed, all ground for the equitable relief failed also; and the court below should have dismissed the bill, leaving the parties to the settlement of their rights in the action at law. In the absence of fraud or imposition in the issuing of the patent, the question was one of conflicting title under the treaty on one side, and the acts of Congress, appropriating every sixteenth section in the townships for the benefit of schools, on the other, — a question purely of law.

The State of Mississippi acquired a right to every sixteenth section, by virtue of these acts, on the extinguishment of the Indian right of occupancy, the title to which, in respect to the

particular sections, became vested, if vested at all, as soon as the surveys were made and the sections designated. No patent was necessary, or is ever issued, for these school sections. And the question presented is, whether the general right reserved to Wall under the treaty, to select a section of land in the ceded territory, operated to suspend the vesting of the title in the State, till a selection could be made and patent issued, under the direction of the President; or whether the selection in respect to these general floating rights, that bound no particular parcel or section, must be made in subordination to the right acquired by the State.

The question, as before said, is one of law, and should have been left to the trial at law in the action of ejectment pending between the parties.

There is no doubt but that all persons in whose behalf reservations were made under the treaty, and who were residents upon any particular tract, and had made improvements thereon at its date, were entitled to the section, including their improvements, in preference to any other right that could have been previously acquired under the government; because the land embraced within the section was so much excepted from the cession. No previous grant of Congress could be paramount, according to the rights of occupancy which this government has always conceded to the Indian tribes within her jurisdiction.

It was so much carved out of the Territory ceded, and remained to the Indian occupant, as he had never parted with it. He holds, strictly speaking, not under the treaty of cession, but under his original title, confirmed by the government in the act of agreeing to the reservation.

But the question here is, whether the reservation of a right, not to any particular parcel or section of the territory ceded, but a right, generally, to have that quantity of land out of it, and to be located under the direction of the President, stands upon the same footing, and has the effect to cut off the right claimed by the State to have attached under the acts of Congress to the school section previous to the location made by the President.

We forbear expressing any opinion upon it, as the question is not now properly before us, and as it belongs to the action at law, the trial of which should not be anticipated or the case prejudged.

We shall therefore reverse the decree, and remit the proceedings to the court below, with directions to dissolve the injunction and dismiss the bill of the complainants.

31 *

## *Order.*

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Southern District of Mississippi, and was argued by counsel. On consideration whereof, it is now here ordered and decreed by this court, that the decree of the said Circuit Court in this cause be, and the same is hereby, reversed, with costs, and that this cause be, and the same is hereby, remanded to the said Circuit Court, for further proceedings to be had therein, in conformity to the opinion of this court.