## MEEHAN et al. v. JONES.

(Circuit Court, D. Minnesota, Fourth Division. November 9, 1895.)

INDIAN LANDS—TREATIES—"SETTING APART" LANDS FOR INDIVIDUAL.
  The treaty of October 2, 1863, between the United States and the Chippewa Indians, provided that there should be "set apart from the tract" thereby ceded a reservation of 640 acres, near the T. river, for the chief, M. *Held*, that the effect of such provision was to vest in M. such a title or interest in the 640 acres that, upon selection made, he could execute a valid lease thereof, without the approval of the secretary of the interior.

This was a suit by Patrick Meehan and James Meehan against Ray W. Jones to quiet title to certain lands. The cause was heard on the pleading and proofs.

Orville Rinehart, C. D. O'Brien, and T. D. O'Brien (John C. Judge, of counsel), for complainants.

James A. Kellogg (Frank F. Davis, of counsel), for defendant.

NELSON, District Judge. I find the facts to be as follows: A treaty was concluded October 2, 1863, between the United States and certain Chippewa Indians, article 9 whereof provides "that, upon the urgent request of the Indians, parties to this treaty, there shall be set apart from the tract hereby ceded a reservation of six hundred and forty (640) acres, near the mouth of Thief river, for the chief Moose Dung." In accordance with this article of the treaty, Moose Dung selected certain lands, but died before the same were surveyed. About September 10, 1879, a formal selec-

tion of those same lands was made, which was approved by the secretary of the interior, and the lands set apart by the government. I further find that the property in controversy is a part of this selection, and that a lease thereof was made and executed to complainants by the present Chief Mon-si-moh, eldest son of, and successor to, the old Chief Moose Dung, dated November 7, 1891, which is described as a strip of land 10 feet wide off the bank of the Red Lake river, conveying the shore rights, for the purposes of lumbering, for a period of 10 years from date; that a lease was also executed July 20, 1894, to defendant, by the same Mon-si-moh, of a portion of the selected land, including the strip covered by complainants' lease, for a period of 20 years from date, which lease was thereafter modified and approved by the secretary of the interior; that complainants have used the premises for lumbering, built a sawmill adjacent thereto, with booms and appliances, and expended a certain amount of money thereon.

Defendant insists that Mon-si-moh had no such title as would enable him to make a valid lease, unless the same was approved by the government, and that complainants' lease is invalid because not so approved. The decisive question is whether, under the terms of the treaty, such a title to or interest in the lands selected was vested in Mon-si-moh as would empower him to make a valid lease of the premises in question to complainants. Defendant urges strongly that article 9 of the treaty in effect excepts the selection from the operation of the treaty, and leaves it unaffected thereby. I do not so interpret the language. The words are, "shall be set apart from the tract hereby ceded." The act of cession is completed, the title has passed to the government, and "upon the urgent request of the Indians, parties to this treaty" the government is asked to set apart a reservation of 640 acres for the chief. No restrictions or conditions subsequent are imposed; and, in order to determine the title or interest of Mon-si-moh, it is necessary to inquire what construction has been placed by the government and the courts upon the words "set apart" and "reservation," as used in these treaties, or in cases of a like nature. Section 18 of the organic act of Minnesota, passed by congress March 3, 1849, provides that sections 16 and 36 in each township "shall be and the same are hereby reserved" for school purposes; and in the act of congress of February, 26, 1857, authorizing the state government of Minnesota, we find "that seventy-two sections of land shall be set apart and reserved for the use and support of a state university." In neither of these cases has it ever been questioned but that a fee-simple title passed; and no patents have ever been issued, or were necessary, to confer title to these lands. Gaines v. Nicholson, 9 How. 365. In Glenn v. Glenn, 41 Ala. 582, the court says, "'To allot' is usually understood as meaning to set apart a portion of a particular thing or things to some particular person"; and in Best v. Polk, 18 Wall. 112, where by the terms of a treaty there was no provision for a patent, the term "allotted" was held to pass the full title. See, also, Gaines v. Nicholson, 9 How. 356. To the same effect is the case of U. S. v. Brooks, 10 How. 442, where it was held that the

expression, "shall be laid off," gave the reservees a fee-simple title to the land, as fully as any patent from the government could do. In the supplementary articles to the Choctaw treaty of September 28, 1830 (7 Stat. 340), wherein no provision is made for patents, the terms, "shall be entitled to," "there is allowed," "may locate," "shall be granted," "there is given," are used synonymously with respect to reservations. In Newman v. Doe, 4 How. (Miss.) 561, it was held that the words in a treaty, "shall be entitled to a reservation," were equivalent to a grant. In Niles v. Anderson, 5 How. (Miss.) 365, the court says that the words, "a reservation shall be granted," conveyed the fee, and that the term "reservation" was equivalent to an absolute grant; and this doctrine was approved in the case of Best v. Polk, 18 Wall. 115, where it was said, "The treaty granted the land, but the location had to be fixed before the grant could become operative." In Doe v. Wilson, 23 How. 457, the language of the court was, "The treaty itself converted the reserved sections into individual property"; and in Crews v. Burcham, 1 Black, 357, "the equitable right to the lands, when selected, was perfect." See, also, Prentice v. Railroad Co., 43 Fed. 275. I am of opinion, upon due consideration of the testimony, that it was the intention of both parties to the treaty that this reservation so set apart should be in the nature of a grant to Moose Dung, whereby he should acquire title to the same, burdened with no restriction or condition subsequent, save that of selection. Further, that selection and location were only necessary to give identity, and thereupon such a title to or interest in the selected lands was vested in Mon-si-moh that he could and did execute a valid lease of the strip in controversy to complainants, and that the approval of the secretary of the interior was not necessary, and gave no additional force to the lease. I hold, therefore, that the lease of November 9, 1891, by Mon-si-moh to complainants, was and is a valid and subsisting demise of the land covered thereby, and that the rights and privileges therein contained should be vested and quieted in them, as against the claims of defendant. A decree will be entered accordingly.