**UNITED STATES v. STOTTS et al.**
No. 624–E.

District Court W. D. Washington, N. D.
Oct. 25, 1930.

The government seeks to quiet title to certain tidelands included in the Lummi Indian Reservation, to which the defendants claim an interest through purchase from the state of Washington.

It is agreed:

That in 1855, Governor Stevens, for Washington Territory, being thereunto daily authorized, entered into a treaty with the chiefs, headmen, and delegates of certain Indian tribes, whereby tracts of land would be set aside, and, as far as necessary, surveyed and marked for the exclusive use of Indians. That, for the purpose of defining and establishing the boundary, the President of the United States thereafter, on November 22, 1873, issued a proclamation establishing the Lummi Indian Reservation pursuant to the terms of the treaty, as follows:

"Executive Mansion, November 22, 1873.
"It is hereby ordered that the following tract of country in Washington Territory be withdrawn from sale and set apart for the use and occupation of the Dwamish and other allied tribes of Indians, viz: Commencing at the eastern mouth of Lummi River; thence up said river to the point where it is intersected by the line between sections 7 and 8 of township 38 north, range 8 east of the Willamette meridian; thence due north

620

on said section line to the township line between townships 38 and 39; thence west along said township line to the low water mark on the shore of the Gulf of Georgia; thence southerly and easterly along the said shore, with the meanders thereof, across the western mouth of Lummi River, and around Point Francis; thence northeasterly to the place of beginning; so much thereof as lies south of the west fork of the Lummi River being a part of the island already set apart by the second article of the treaty with the Dwamish and other allied tribes of Indians, made and concluded January 22, 1857. (Stat. at Large, vol. 12, p. 928)

"U. S. Grant."

That thereafter the lands within the exterior boundaries of the Lummi Reservation were devoted to the exclusive use and enjoyment of the Indians, and the lands set out in the bill of complaint have been and are a part of the reservation, a public domain of the United States, and the title has been held in fee simple for the use and benefit of the Indians, except as allotments have been made from time to time to individual Indians. That the state of Washington attempted to convey title to defendants by deeds, contracts, etc., and this casts a cloud, etc., upon plaintiff's title. That the uplands adjacent to the tidelands in issue have been surveyed and allotted to Indians, and by the Indians sold to the defendants, the present owners. That no tidelands have at any time been allotted to the Indians in the Lummi Reservation, and the policy has been in the survey of public lands bordering on navigable waters where tide ebbs and flows to extend the lines of survey to ordinary high-water marks, and the general instructions to the surveyors general have uniformly provided for such procedure.

Anthony Savage, U. S. Atty., and Tom De Wolfe, Asst. U. S. Atty., both of Seattle, Wash.

John H. Dunbar, Atty. Gen., of Washington, and Lester T. Parker, Asst. Atty. Gen., of Washington, for defendants.

NETERER, District Judge (after stating the facts as above).

It is primer law that Indian treaties are to be liberally construed, to the end that Indians will retain the benefits conferred by the treaty at the time of its execution. Jones v. Meehan, 175 U. S. 1, 20 S. Ct. 1, 44 L. Ed. 49; United States v. Winans, 198 U. S. 371, 25 S. Ct. 662, 49 L. Ed. 1089; Mason v. Sams (D. C.) 5 F.(2d) 255.

The Indians' right of occupancy is not predicated upon a grant by the United States, but under a reserved aboriginal right which the Indians inherently held in the land segregated and withheld from the land ceded by the Indians under the treaty. Gaines v. Nicholson, 9 How. (50 U. S.) 356, 13 L. Ed. 172. See, also, United States v. Winans, supra.

The Enabling Act (Rem. Comp. St. Wash. 1922, p. 31, § 4) disclaimed all title to all lands "held by any Indian or Indian tribes; and that until the title thereto shall have been extinguished by the United States, the same shall be and remain subject to the disposition of the United States, and said Indian lands shall remain under the absolute jurisdiction and control of the congress of the United States."

The executive order defining the limits is conclusive as to the boundaries, and extended to the low-water mark on the shores of the Gulf of Georgia, and thence along this line to the point of beginning at the eastern mouth of the Lummi river. United States v. Romaine (C. C. A.) 255 F. 253.

The right of the Indians to the lands of the reservation was a common right, and the allotment of a part of the reservation to some of the Indians does not destroy the common right to the enjoyment of the unallotted portion for any use to which it was adapted. And the fact that the survey did not include the tidelands cannot prejudice the rights of the Indians. Moss v. Ramey, 239 U. S. 538, 36 S. Ct. 183, 60 L. Ed. 425; United States v. Romaine, supra. "* * * Nor shall any white man be permitted to reside upon the same without permission of the said tribes or bands, and of the superintendent or agent, but, if necessary for the public convenience, roads may be run through the said reserves, the Indians being compensated for any damage thereby done them." Article 2 of Treaty, 12 Stat. 928.

It may not be said that the United States held these lands in trust for the state when admitted. While it held the land, the United States had the right to grant for appropriate purposes, titles, or rights in the land below the high-water mark or tidewater, and, the United States having acted in accordance with the interests of the Indians and the object for which the right was reserved, and, in this connection, I think the court may judicially know that the Indians subsisted during this time by hunting and fishing, and the tidelands were a necessary perquisite to

the enjoyment of fishing, and which was evidenced by the proclamation of the President carrying the reservation to low water, and this treaty having been promulgated and these rights having been enjoyed by the Indians from time immemorial and until after the admission of the territory as a state and to the present, the defendants may not complain. Shively v. Bowlby, 152 U. S. 1, 14 S. Ct. 548, 38 L. Ed. 331; United States v. Romaine, supra.

Each treaty and proclamation must rest upon its own provisions. The Quilayute Indian Reservation proclamation by President Cleveland does not contain any inference that the reserve for the Indians extended below high tide or included lands covered by the navigable waters adjoining the land conveyed. See Taylor et al. v. United States (9th Circuit) 44 F.(2d) 531.

The reservation of the tideland was made very plain by definite declaration in extending it to low tide (United States v. Holt, 270 U. S. 49, 46 S. Ct. 197, 70 L. Ed. 465), and the purpose is clear in article 5 of the Treaty, where the right to take fish on the usual and accustomed grounds and stations is reserved (12 Stat. 928), and, as said by the Supreme Court in United States v. Holt, supra, at page 59 of 270 U. S., 46 S. Ct. 197, 199: "It follows * * * that disposals by the United States during the territorial period are not lightly to be inferred, and should not be regarded as intended unless the intention was * * * made very plain."

In United States v. Holt, supra, there was nothing approaching a right to the underlying mudlake, nor anything indicating any purpose to withhold the land from the future state. In this case there is the specific declaration and the enjoyment during the entire period by the Indians.

There is nothing to show that the Indians have abandoned the reservation nor have allotments been made to all, and the reserved right is common to all. The allotments of the upland did not release the abutting tidelands from the reserved right as long as the land is used by the Indians, as here. There is nothing in United States v. Ashton (C. C.) 170 F. 509, nor in United States v. Holt, supra, relied upon by the defendants, against this conclusion. Every contention on the part of the government is fairly within the holding of the court in United States v. Romaine, supra.

Decree for plaintiff.