## UNITED STATES, Respondent, v. BENJAMIN F. BISEL, Appellant.

PUBLIC LANDS — *Unlawful fencing — Pleading.* — The complaint, filed by the United States district attorney in the District Court, sitting to hear causes arising under the Constitution and laws of the United States, set forth, that the appellant had enclosed with a fence a certain tract of public land to which he had no right or color of title, and prayed for a summary removal of the fence by the United States marshal, and that appellant be enjoined from again erecting the same. It was drawn in view of the Act of Congress of February 25, 1835, forbidding unlawful enclosures of the public lands of the United States. The tract fenced was a part of a section reserved under section 1946 of the United States Revised Statutes for public school purposes, and this fact appeared on the face of the complaint. The appellant demurred on the ground that the court had no jurisdiction of the subject-matter of the action; that the complaint failed to set forth a cause of action; and that it was ambiguous and uncertain in not disclosing whether the action was legal or equitable. *Held*, that the demurrer was properly overruled.

DISTRICT COURT — *Jurisdiction under act of Congress forbidding enclosures of public land — Jurisdiction to determine United States cases, and enforcement of decrees therein.* — *Held*, that the Act of Congress of February 25, 1885, concerning unlawful enclosures of public lands, expressly confers jurisdiction upon the territorial District Courts to determine causes arising thereunder. *Held*, that while said courts, when sitting to determine causes arising under the Constitution and laws of the United States, are of limited jurisdiction in that respect, Congress, nevertheless, has full power to confer upon them any jurisdiction not in contravention of the Constitution. *Held*, that said courts are not United States courts (*Territory* v. *Murray*, 7 Mont, 251, cited): that they are simply territorial courts, invested by Congress with additional powers to hear and determine causes arising under the Constitution and laws of the United States; and that the practice of each of said courts sitting at one place in its district to determine such causes, and of having orders and decrees therein executed by the United States marshal, has been too long established to be questioned.

PRACTICE — *Pleading — Form of action in District Court — Hearing United States causes — Legal and equitable action.* — *Held*, that there is but one form of action in the Territory of Montana under the Practice Act (Comp. Stats. div. 1, § 1), and that said act applies to actions in the District Courts, when sitting to hear and determine causes arising under the Constitution and laws of the United States, as well as to actions in them simply as territorial courts (*United States* v. *Williams*, 6 Mont. 336, cited); and also, that there is nothing improper in the complaint in this case praying for the destruction of appellant's fence and an injunction.

PRACTICE — *Pleading — Injunction against trespasser.* — The complaint, among its averments, alleged that the appellant was a trespasser. A demurrer filed on certain other grounds was overruled. *Held*, that having conferred himself a naked trespasser by the demurrer, the appellant could not complain that no grounds for an injunction were set forth in the complaint; and that the injunction granted could not hurt him if he obeyed the law.

PUBLIC LAND — *School sections.* — *Held*, that while school sections are segregated *sub modo* from the public domain under section 1946 of the United States Revised Statutes, the title to them, and dominion and control over them, still remain in the United States; and that they are public land within the scope of the term, as used in the Act of Congress of February 25, 1885, concerning unlawful enclosures of public land.

*Appeal from the District Court, Gallatin County.*

STATEMENT.

This action was brought by the United States, as plaintiff, against the defendant, Benjamin F. Bisel, for the purpose of compelling him to remove certain fences with which he had enclosed a portion of the public domain, reserved for school purposes under section 1946 of the United States Revised Statutes, and to enjoin him from again enclosing said land. It was instituted under the Act of Congress of February 25, 1885 (U. S. Rev. Stats. at Large, 321), forbidding unlawful enclosure of the public domain. The defendant filed a demurrer to the complaint, which was overruled, and thereupon allowing judgment to be entered against him he appealed.

*Luce & Luce,* for Appellant.

It may be contended that the complaint is sufficient to make out a case of nuisance or purpresture, if it is held bad under the Act of Congress of February 25, 1885. Such a position is a virtual confession of the third ground of the demurrer, that the complaint is ambiguous and uncertain. But in order that an action on the case may lie at all, it must be a private nuisance, for as to all public nuisances redress must be sought by criminal prosecution, unless they subject some individual to a special injury. (Comp. Stats. of Mont. § 162, p. 546; 2 Wait's Actions and Defenses, § 8, pp. 107, 108; *Pierce* v. *Dart*, 7 Cowen, 609; *Francis* v. *Schoellkopf*, 53 N. Y. 152; 2 Bouvier's Law Dict. Nuisance, and cases there cited; *Lansing* v. *Smith*, 8 Cowen, 146, 151, 152; 4 Wait's Actions and Defenses, p. 767; *Yolo County* v. *City of Sacramento*, 36 Cal. 193; *Grigsby* v. *Water Co.* 40 Cal. 396; *City of Georgetown* v. *Alexandria Canal*, 12 Peters, 96–98.) The complaint, however, alleges that the land described therein belongs to the United States. If this be so, it follows that the acts complained of if a nuisance must be a public and not a private nuisance, and can only be abated by indictment or under the Act of 1885. (1 Bishop on Criminal Law, §§ 534, 972, 1031 *a*; *Commonw.* v. *Eckert*, 2 Browne [Pa.] 249.) The suit cannot be for a purpresture, because the enclosure is not of a common nor of a highway, nor an enclosure

between high and low water mark on a public river. If it were, it belongs to the class of public nuisances, and the remedy is by criminal proceedings. (4 Wait's Actions and Defenses, § 2, p. 729; *Gray* v. *Ayres*, 7 Dana, 375; 32 Am. Dec. 107; *State* v. *Paul*, 5 R. I. 185; *Brown* v. *Perkins*, 5 Gray, 89.) But if the case presented could be held to be ejectment, or trespass, or nuisance of any kind, then the court has no jurisdiction, because the court is one of limited jurisdiction, and there is no authority to hear and determine such actions given by any act of Congress. The court in which this action was brought can try only such causes as arise under the Constitution and laws of the United States. (U. S. Rev. Stats. § 1910.) Sections 563 and 629 of the United States Revised Statutes respectively confer jurisdiction upon the District and Circuit Courts of the United States, and the kinds or classes of cases and causes that may be brought or controverted therein are specifically set forth. These sections have been amended by the Acts of March 3, 1875 (18 Stats at Large, 470), and February 18, 1875. (18 Stats. at Large, 316.) If the court in which this action was brought is held to be in any sense a United States court, it surely has no jurisdiction of the case stated in the complaint, unless under said Act of 1885; because the jurisdiction of United States courts is confined to the powers declared in the Constitution, or expressly conferred by Congress. (U. S. Const. art. 3, § 2; *Hodgson* v. *Bowerbank*, 5 Cranch, 303; *Bank of U. S.* v. *Deveaux*, 5 Cranch, 61 [opinion, 85]; *Mossman* v. *Higginson*, 4 Dall. 12–14; *Ex parte Bollman*, 4 Cranch, 93, 94; *Osborn* v. *U. S. Bank*, 9 Wheat. 817, 818.) No court of the United States except the Supreme Court has other jurisdiction than that expressly conferred by congressional enactment. (*Sheldon* v. *Sill*, 8 How. 448, 449; *Ex parte Bollman, supra; U. S.* v. *Hudson*, 7 Cranch, 32–34; *U. S.* v. *Eckford*, 6 Wall. 488; *McIntire* v. *Wood*, 7 Cranch, 505; *U. S.* v. *Bevans*, 3 Wheat. 386–389; *The City of Panama*, 101 U. S. 543–547; 2 Story on Constitution, § 1647.) But it may be contended under the decisions in *Scott* v. *Jones*, 5 How. 343; *Am. Ins. Co.* v. *Carter*, 1 Peters, 543–547; *The City of Panama, supra; Benner* v. *Porter*, 9 How. 239–244; *Reynolds* v. *U. S.* 98 U. S. 153, 154; *Clinton* v. *Englebricht*, 13 Wall. 434; and *Hornbuckle* v. *Toombs*, 18 Wall. 655, 656, that

the court in which this action was brought is not a United States court. Then, the judgment is not one that any territorial court can render, for it directs the execution thereof to be accomplished by "the United States marshal for Montana." No writ from a territorial court runs to the United States marshal, and further, unless it can be held that the court below in which this suit was tried is a United States court, then the judgment is invalid under said Act of 1885, for it is not "the proper order, judgment, or decree for the destruction of the enclosure in a summary way." (§ 2, of said act.) The complaint does not present a case that can be maintained under the act of Congress, which provides expressly for two classes of cases, a civil action, and proceedings in equity. It attempts to cover both classes. It may be said that there is but one form of action in Montana. This is true as to territorial courts; but if the court below is to be considered a United States court, it is not true. (*Hurt* v. *Hollingsworth*, 100 U. S. 100; *Thompson* v. *R. R. Co.* 6 Wall. 134.) The action cannot be maintained under the Act of 1885, because the complaint shows upon its face that the land is reserved, and therefore not public land. In other words, the complaint shows the land to be school land, and reserved by competent authority. (U. S. Rev. Stats. § 1946; U. S. Const. art. 4, § 3, clause 2; *U. S.* v. *Fitzgerald*, 15 Peters, 407.) "The words 'public lands' are habitually used in our legislation to describe such as are subject to sale or other disposal under general laws." (*Newhall* v. *Sanger*, 92 U. S. 761–763.) When a tract is once legally appropriated to any purpose it becomes severed from the mass of public lands. (*Wilcox* v. *Jackson*, 13 Peters, 511, 512. See, also, *U. S.* v. *Fitzgerald*, 15 Peters, 417; *Easton* v. *Salisbury*, 21 How. 428, opinion.) Not only then can there be no valid claim made to surveyed sections 16 and 36 in Montana under the general laws for the disposal of the public domain, to wit, pre-emption, homestead, timber culture, desert entry or private entry, coal or mineral claim; but a patent issued for such land would be absolutely void. (*Morton* v. *Nebraska*, 21 Wall. 660, 669, 675; *Polk* v. *Wendall*, 9 Cranch, 99; *Minter* v. *Crommelin*, 18 How. 88; *Reichart* v. *Felps*, 6 Wall. 160; *L. L. & G. R. R. Co.* v. *U. S.* 92 U. S. 745; *Cooper* v. *Roberts*, 18 How. 177–179; *Stoddard*

v. *Chambers*, 2 How. 284, 318; *Minnesota* v. *Bachelder*, 1 Wall. 109.) The United States holds the lands in suit as trustee simply. It has no such title as can be acquired under any settlement act or other law for the disposal of the public domain.

*Robert B. Smith*, United States District Attorney, for Respondent.

It will be seen by referring to the complaint that the land is situated in section 36. This land is by section 1946 of the United States Revised Statutes set apart and *reserved* for the use of the public schools of Montana, when the same is admitted into the Union as a State. The title to this land is in the United States; it has only been reserved from *sale* for a specific purpose. The power that made the reservation can at any time, if it saw fit, restore the land to sale under the general land laws of the United States. The term "public lands," as used in the case of *Newhall* v. *Sanger*, 92 U. S. 761, and similar decisions, was used in construing statutes making certain grants of land for the aid of building railroads. The language is to be understood and construed most strongly against the grantee in all *public* grants. (*Rice* v. *Minnesota & Northwestern R. R. Co.* 1 Black, 360; *Leavenworth, Lawrence & Galveston R. R. Co.* v. *U. S.* 2 Otto, 733; *Griffing* v. *Gibbs*, 1 McAll. 212.) Can it be urged, with any degree of consistency, that Congress, by the Act of February 25, 1885, meant to punish the person who should fence section 35, if public land, and to permit the enclosing of section 36 by another? Such was not the intention of Congress, and it is only by keeping in view the objects of the law-making power, and the evil sought to be remedied, that a correct and proper interpretation of the term "public lands," as used in the act, can be had. The District Courts of the Territories have the combined powers and jurisdiction of the United States Circuit and District Courts in the States, and the jurisdiction of the *nisi prius* courts of the States. The practice of holding such courts at one particular place in each district to act in a dual capacity is too long established and recognized in this Territory to be now overturned and abrogated. It has been the universal custom to appoint one particular place in each district for the trial of cases in which the United States has an interest, or cases which arise

under the Constitution and laws of the United States. While we have been unable to find any statute which directly authorizes such a course, yet we have found statutes which at least by implication sanction such proceedings. (See U. S. Rev. Stats. §§ 1865, 1871, 1874. And again, the Act of June 30, 1879, referring to the drawing of jurors, Supplement of U. S. Rev. Stats. pp. 497, 498.) These sections each and all refer to the *district*, and by implication at least fix the fact that but one court in each district is to be held for the trial of United States causes. We further contend in the case at bar, that if it shall be determined that the Act of Congress of February 25, 1885, does not include land reserved for schools, still the action could be maintained by the United States, independent of any statute. The action of the appellant in fencing up the public domain creates a *purpresture,* which, according to the common-law writers, was "an enclosure by a private individual of a *common* or *public domain.*" (See 2 Bouvier's Law Dict. 395.) According to Lord Coke, "purpresture is a close, that is, when one makes several to himself that which ought to be in common to many," and in England such action will be restrained and an injunction granted on *ex parte* affidavits. And see the case of *U. S.* v. *Brighton Ranch Co.* 26 Fed. Rep. 218, which is directly in point.

McCONNELL, C. J.—In this case there was a demurrer to the complaint, which was overruled, and the defendant refusing to answer, or make other defense, there was judgment by default, according to the prayer of the complaint. From this judgment and the order overruling the demurrer this appeal was taken. The complaint is as follows, to wit: "*First.* That the defendant, Benjamin F. Bisel, since 1883, has had enclosed, by a good, strong, and substantial fence, the southeast quarter of section 36, in township 2 south, range 5 east, in Gallatin County, Montana Territory; that said land is public land, and that the defendant has no filings or entry thereon by which he can secure title to said land; nor has the defendant any title, or right, or color of title to said land; that he is using said land exclusively as his own, and by his fences is preventing the free passage over and across that portion of the public domain. Wherefore the plaintiff's counsel asks that the defendant be compelled to remove

his fences from around said land, and that he be forever enjoined and restrained from ever enclosing said land while the same remains public land, and that if the defendant shall fail or refuse to remove his fences in five days from the rendition of the judgment and decree herein, that the United States marshal for Montana Territory be empowered to take down and remove said fences in a summary manner. . . . ." To this complaint the defendant interposed the following demurrer, to wit: "*First.* That the said court has no jurisdiction of the subject-matter of the action, because (*a*) it is not a cause that arises under the Constitution or any law of the United States; (*b*) said court by law is one of limited jurisdiction, and there is no authority given by any act of Congress authorizing or empowering said court to hear and determine such a cause as that set out in the complaint; (*c*) because the court has no authority to grant the relief prayed for in said complaint. *Second.* That said complaint does not state facts sufficient to constitute a cause of action. *Third.* The complaint is ambiguous and uncertain, in this: it cannot be ascertained therefrom whether the plaintiff's action is intended to be ejectment, trespass, or against the defendant for maintaining a nuisance, or whether a suit in equity or an action at law."

The complaint is evidently founded upon the Act of Congress of February 25, 1885, found in 23 United States Statutes at Large, 321. This act provides "that all enclosures of any public lands in any State or Territory of the United States, heretofore or to be hereafter made, erected, or constructed by any person, party, association, or corporation making or controlling the enclosure, having no claim or color of title made or acquired in good faith, or an asserted right thereto by or under claim made in good faith, with a view to entry thereof at the proper land office under the general laws of the United States at the time any such enclosure was or shall be made, are hereby declared to be unlawful, and the maintenance, erection, construction, or control of any such enclosure is hereby forbidden and prohibited; and the assertion of a right to the exclusive use and occupancy of any part of the public lands of the United States, in any State, or any of the Territories of the United States, without claim, color of title, or asserted right, as above specified, as to enclosure, is likewise declared unlawful, and

hereby prohibited." It also provides in section 2 that it shall be the duty of the United States district attorney " to institute a civil suit in the proper United States District or Circuit Court, or territorial District Court, in the name of the United States, and against the parties named or described, who shall be in charge of or controlling the enclosure complained of, as defendants; and jurisdiction is also hereby conferred on any United States District or Circuit Court, or territorial District Court, having jurisdiction over the locality where the land enclosed, or any part thereof, shall be situated, to hear and determine proceedings in equity, by writ of injunction, to restrain violations of the provisions of this act. . . . . In any case, if the enclosure shall be found to be unlawful, the court shall make the proper order, judgment, or decree for the destruction of the enclosure, in a summary way, unless the enclosure shall be removed by the defendant within five days after the order of the court." By a simple comparison of the complaint with the provisions of the act of Congress, it appears that this is a cause of action arising under the laws of the United States. Hence there is nothing in the first ground of demurrer to the jurisdiction of the court.

And as to the second ground, we observe that while the District Court, sitting to hear and determine causes arising under the Constitution and laws of the United States, is one of limited jurisdiction in that respect, still Congress has the undoubted power to confer upon it any jurisdiction not in contravention of the provisions of the Constitution of the United States, and it has conferred upon it the jurisdiction in express terms to hear and determine causes arising under the aforesaid Act of February 25, 1885. And said act also expressly confers the power to grant the relief prayed for. It directs the United States district attorney to institute suit in the " territorial District Court," and "jurisdiction is also hereby conferred on . . . . [the] territorial District Court having jurisdiction over the locality where the land enclosed shall be situated, to hear and determine proceedings in equity, by writ of injunction, to restrain violations of the provisions of this act." Nothing can be plainer than the language of this statute, and there is no room left for argument. In the case of *Territory* v. *Murray,* 7 Mont. 251, we defined the

nature and the powers of the territorial courts, and reference is here made to said case and the authorities there cited. And we repeat here, that they are not United States courts, but simply territorial courts, upon which is conferred the additional power by Congress to hear and determine causes arising under the Constitution and laws of the United States; and while section 1910 of the Revised Statutes of the United States limits their powers to such as may be "vested in the Circuit and District Courts of the United States," still, the jurisdiction to try causes arising under the act in question is conferred upon said courts as well as upon the territorial courts; and the practice of sitting to hear and determine causes arising under the Constitution and laws of the United States in one place only in each district, and of having the decrees and orders of the court while so sitting executed by the United States marshal, has been too long established to be now called in question.

But it is further insisted that the act provides for two classes of cases: "*First,* for a civil action; *second,* for proceedings in equity; and that the complaint seems an endeavor to cover both classes of cases." A sufficient answer to this is found in the fact that the statute which provides for a civil suit, to the end that "if the enclosure shall be found to be unlawful the court shall make the proper order, judgment, or decree for its destruction in a summary way," and the proceedings in equity by writ of injunction, to restrain violations of this act, is only auxiliary to the suit to destroy the unlawful enclosures. The purpose is to destroy those already made, and enjoin the guilty trespassers from creating others in the future. There is but one form of· action under our territorial practice act, and it applies to the territorial courts when sitting to hear and determine causes arising under the Constitution and laws of the United States, as well to them as when sitting simply as territorial courts. (*U. S.* v. *Williams,* 6 Mont. 386.) There is nothing improper, then, in the complaint praying for the destruction of the enclosure, and an injunction restraining the defendant from again erecting it. As to the objection that the complaint sets forth no ground for an injunction, it is enough to remark that the defendant by his demurrer confesses himself to be a naked trespasser, and it does not lie in his mouth to complain of an order restraining him from

further trespasses. · Such an order cannot hurt him, if he obeys the law.

But the main controversy arises out of the second cause of demurrer, to wit, that the complaint does not state facts sufficient to constitute a cause of action. It describes the lands alleged to be enclosed as a part of the thirty-sixth section, and by section 1946 of the Revised Statutes of the United States, said section is reserved for public school purposes; and it thus appearing upon the face of the complaint that the *locus in quo* is public school land, it is insisted that it is no part of the public lands, and hence is not embraced by the act in question. In support of this proposition we are referred to the cases of *Newhall* v. *Sanger*, 92 U. S. 761, 763; *Wilcox* v. *Jackson*, 13 Peters, 511, 512; *U. S.* v. *Fitzgerald*, 15 Peters, 417; *Easton* v. *Salisbury*, 21 How. 428; and *Minnesota* v. *Batchelder*, 1 Wall. 109. It is true that section 1946 reserves sections 16 and 36 in each township in the Territory for public school purposes, and, while such reservation continues, such lands are *sub modo* segregated from the public domain; they are not open to settlement under the statutes regulating this subject; they would not pass under any granting act of Congress that did not mention them; nor would they be embraced under the definition of "public lands," as given by Mr. Justice Davis in the case of *Newhall* v. *Sanger*, *supra*. He says they "are habitually used in our legislation to describe such as are subject to sale or other disposal under general laws." This case arose under the Acts of Congress of 1862 and 1864, granting to the Pacific railroads every alternate section of public lands designated by odd numbers, within certain limits, and these acts also declare that the lands granted shall not include any "government reservation." The land in controversy was embraced in a Mexican grant, then *sub judice,* and the majority of the court held that it was a "government reservation," and did not pass by the granting acts *supra,* and did not come within the expression "public lands" used in them. The case of *Wilcox* v. *Jackson*, 13 Peters, 511, decides that when the United States appropriates public lands for a military post, they are reserved, and do not pass under a settler's pre-emption act. The court held generally in that case, that "whensoever a tract of land shall have once been legally appropriated to any

purpose, from that moment the land thus appropriated becomes severed from the mass of public lands, and that no subsequent law or proclamation or sale would be construed to embrace it, although no reservation were made of it." We have examined all these cases carefully, and do not think they control the case before us. They arise between individuals who claim rights under certain reservations as against grants more or less general, in which such reservations are not excepted. We must inquire what Congress meant by the use of the words "public lands" in the statute under consideration. It was manifestly passed for the purpose of remedying a great public evil, to wit, the fencing up, and thus appropriating to individual uses, the common heritage of all. This court might, almost, also take judicial notice of the fact, which is a part of the history of the Territories, that the greed of syndicates and corporations had led them to fence up large areas of the public domain about the time this act became a law, and it was its purpose to destroy such enclosures in a "summary manner." And while sections 16 and 36 were reserved for the purpose of aiding the development of the public school system in the coming State of Montana, and, so far as their sale for the purposes of settlement is concerned, were segregated from the public domain, still the title to them and the dominion and control over them remain in the government of the United States; the agents of the public school system have no control over them. The United States may hold them in trust for the schools, and the act reserving them may be irrevocable without the consent of the people of the Territory, as it is contended was decided in the case of *Minnesota* v. *Batchelder*, 1 Wall. 109; still such lands must be held to be public lands within the meaning of this act. Congress certainly did not intend to pass a purely remedial statute, and leave exposed to the rapacity of lawless trespassers, the heritage of the children of this Territory. To so construe this act would be to defeat the operation of the law as to one eighteenth of the lands of this Territory, which are exposed to the forbidden depredations. It would be to give a meaning to words at once narrow and not intended by Congress, and to a large extent defeat the very object of the law. There is no statutory definition of the words "public lands," and the meaning of them may vary somewhat

in different statutes passed for different purposes, and they should be given such meaning in each as comports with the intention of Congress in their use. We are then clearly of opinion that the act in question embraces the school lands of this Territory, and that the complaint does state a cause of action.

The other ground of demurrer, which was predicated upon the theory that the action was not brought under the Act of February 25, 1885, is not well taken. The other questions raised in the briefs need not be noticed, as they refer to matters that would arise if we had held the Act of 1885 not applicable to this case. Since the foregoing was written, we have received the case of *Barkley* v. *U. S.* 3 Wash. 522, which fully sustains our view of this question. The action of the court below is sustained, and the judgment affirmed.

*Judgment affirmed.*

BACH, J., and LIDDELL, J., concur.