UNITED STATES, RESPONDENT, *v.* LEWIS A. SCOTT ELLIOT, APPELLANT.

PUBLIC LANDS.—SCHOOL LANDS.—OWNERSHIP.—The organic act of Utah Territory provided that when the lands in said Territory shall be surveyed under the direction of the government of the United States, sections numbered sixteen and thirty-six in each township in said Territory shall be and the same are hereby reserved for the purpose of being applied to schools in said Territory, etc.; *held*, that the reservation was absolute, and as soon as the lands were surveyed they ceased to be public domain open to settlement.

ID.—ID.—FENCING LAW.—The law against unlawful enclosure of the public domain applies only to the public lands of the United States, which are open to settlement and acquisition under general laws, and does not apply to lands reserved for the use of public schools in a Territory, after the lands have been surveyed by the government and their boundaries ascertained.

APPEAL from a judgment of the district court of the first district and from an order overruling a motion for a new trial. The opinion states the facts.

*Mr. Graham F. Putnam,* with *Messrs. Thurman and King* on the brief, for the appellant.

*Mr. David Evans*, Assistant U. S. Attorney, with *Mr. George Sutherland* on the brief, for the respondent.

ANDERSON, J.:

This is an action against the defendant for unlawfully inclosing public lands. The lands in question are what are called "school lands," being a part of section 16, in township 15 S., of range 13 E., of the Salt Lake meridian, and have been surveyed by the government. The defendant owns land on two sides of the section, and in fencing his own land constructed his fence diagonally across the section, inclosing about 400 acres of it. He averred in his answer that he inclosed the land in good faith, intending to acquire a title to it as soon as it came into the market. The cause was tried to the court without a jury, and the court found the inclosure unlawful, and judgment was rendered against the defendant, and the fence was ordered to be destroyed unless the defendant should remove it within five days. There was a motion for a new trial, which was overruled, and the defendant brings this appeal from the order overruling this motion and from the judgment. The sole question for our determination is whether sections 16 and 36 in each township, and known as "school lands," after the same have been surveyed by the government, are "public lands," within the meaning of the act of congress of February 25, 1885 (23 St. at Large, 321), prohibiting the fencing of public lands.

By the organic act of Utah Territory, approved September 9, 1850, it is provided "that, when the lands in said Territory shall be surveyed under the direction of the government of the United States, preparatory to bringing the same into market, sections numbered sixteen and thirty-six in each township in said Territory shall be, and the same are hereby, reserved for the purpose of

being applied to schools in said Territory, and in the states and territories hereafter to be erected out of the same." By section 1 of the act of congress approved February 25, 1885, it is provided "that all inclosures of any public lands in any State or Territory of the United States, heretofore or to be hereafter made, erected, or constructed by any person, * * * to any of which land included within the inclosure the person * * * making or constructing the inclosure had no claim or color of title made or acquired in good faith, or an asserted right thereto by or under claim, made in good faith, with a view to entry thereof at the proper land-office under the general land laws of the United States at the time any such inclosure was or shall be made, are hereby declared to be unlawful, and the maintenance, erection, construction, or control of any such inclosure is hereby forbidden and prohibited; and the assertion of a right to the exclusive use and occupancy of any part of the public lands of the United States in any of the states or territories of the United States, without claim, color of title, or asserted right, as above specified, as to inclosure, is likewise declared unlawful, and hereby prohibited." Section 2 of this act provides "that it shall be the duty of the district attorney of the United States for the proper district, on affidavit filed with him by any citizen of the United States that section 1 of this act is being violated, * * * to institute a civil suit in the proper United States district or circuit court or territorial district court, in the name of the United States, and against the parties named or described, who shall be in charge of or controlling the inclosure complained of as defendants. * * * In any case, if the inclosure shall be found unlawful, the court shall make the proper order, judgment, or decree for the destruction of the inclosure, in a summary way, unless

the inclosure shall be removed by the defendant within five days after the order of the court."

By the organic act for Utah, sections 16 and 36 in each township were reserved for the purpose of being applied to schools in the territory, and they thereby became segregated from the public domain as soon as surveyed, and were no longer open to settlement under the general statutes regulating this subject. It was held in *Wilcox* v. *Jackson*, 13 Pet. 498, that, "whensoever a tract of land shall have once been legally appropriated to any purpose, from that moment the land thus appropriated becomes severed from the mass of public lands, and that no subsequent law or proclamation or sale would be construed to embrace it, although no reservation were made of it." This rule was afterwards approved by the same court in *University* v. *Indiana*, 14 How. 268. A reservation of lands for school purposes for the use of the people of a Territory or State is, in effect, a grant, and the title passes as soon as the lands are surveyed, and patents for school sections are not necessary and are not issued (*Gaines* v. *Nicholson*, 9 How. 361); and the act reserving them is irrevocable, without the consent of the people of the Territory (*Minnesota* v. *Bachelder*, 1 Wall. 109).

In *Ferry* v. *Street*, 4 Utah, 521, 7 Pac. Rep. 712, and 11 Pac. Rep. 571, this court, speaking of school lands, said that, by the decisions of the Supreme Court of the United States, "the various acts of congress mentioned reserving portions of the public lands of the United States to the Territories or States, vest the title to such lands so reserved in the Territories or States when the lands are surveyed, or when they are bounded or ascertained. Until such time, the obligation is executory, and the title remains in the federal government." In the case of *Newhall* v. *Sanger*, 92 U. S. 761, the Supreme Court of

the United States, by Davis, J., said: "The words 'public lands' are habitually used in our legislation to describe such as are subject to sale or other disposal under general laws." This decision was rendered nearly ten years before the law under which the present case is brought was passed, and it cannot be presumed that congress was ignorant of it. It is a rule in the construction of statutes that where the legislative branch of the government has reproduced language in statutory enactments which has been judicially construed it must be taken as using the words in accordance with the judicial construction previously given them, unless a contrary reason plainly appears from the other language used. *The Abbotsford,* 98 U. S. 440. But in the present instance no language is used in the statute under which this case is brought indicating that the words "public lands" are used in a different sense from the definition of them given in *Newhall* v. *Sanger,* but, on the contrary, the meaning given seems to have been in the minds of those who drafted the law.

Section 3 is as follows: "Sec. 3. That no person, by force, threats, intimidation, or by any fencing or inclosing, or by any other unlawful means, shall prevent or obstruct, or shall combine or confederate with others to prevent or obstruct, any person from peaceably entering upon or establishing a settlement or residence on any tract of public land subject to settlement or entry under the public land laws of the United States, or shall prevent or obstruct free passage or transit over or through the public lands: Provided, this section shall not be held to affect the right or title of persons who have gone upon, improved, or occupied said lands under the land laws of the United States, claiming title thereto in good faith." It will be observed that, in the foregoing section, congress used the words, "public lands subject to settle-

ment or entry under the public land laws," and the words "public lands," interchangeably, and in the sense given to them by the court in *Newhall* v. *Sanger.*

The statute against fencing "public lands" includes by its terms public lands within the States as well as those within the Territories, and yet, whatever difference of opinion there may be as to school lands in the Territories, it must be conceded that the government does not own the school lands in the States, and congress has no control over them, and can make no law respecting their control or disposition.

Our attention has been called to the cases of *Barkley* v. *U. S.*, 19 Pac. Rep. 37, in the Supreme Court of Washington Territory, and *U. S.* v. *Bisel*, Id. 251, in the Supreme Court of Montana Territory, in each of which it is held that school lands are public lands, within the meaning of the act of congress of February 25, 1885. We cannot assent to the conclusion reached in those cases, in view of the decisions of the Supreme Court of the United States, above referred to, and the evident purpose of the statute in question. And, in this connection, it is a fact worthy of note that in 1869 the legislature of the Territory of Washington passed an act providing for the leasing of the school lands in that Territory, under which a portion of the school lands in Washington Territory were leased to parties who settled on, fenced, and improved them. On the 6th day of August, 1888, more than three years after the fencing law was passed, congress passed an act (25 St. at Large 358) reciting the fact of these leases having been made, that the lessees had incurred large expense in reducing these lands to cultivation, and that doubts had been raised as to the validity of the leases, and validating the act of the territorial legislature and the leases made under it.

The object congress had in view in passing the act in

question is well understood. Vast tracts of public lands in the western States and Territories had been fenced with barbed wire by wealthy cattle owners, and persons wishing to settle on these lands, and acquire title thereto under the land laws of the United States, were prevented, often by violence, from doing so, and the government was thus prevented from disposing of its lands, and settlers from acquiring homes. But we think the law was not intended to apply to sections 16 and 36 in the several townships, because, as before stated, the school lands in the States were not subject to the control of congress, and those in the Territories were reserved to the Territories wherein they were situated, and were not open to settlement under the general land laws of the United States, and hence were not included in the term "public lands," as used in the statute. The judgment of the district court is therefore reversed.

ZANE, C. J., and MINER, J., concurred.