## Territory v. Choctaw, O. & W. Ry. Co.

### No. 1950, Okla. T.  Opinion Filed April 13, 1908.

#### (95 Pac. 420.)

1. **PUBLIC LANDS—School Lands—Title of Territory—Appropriation by Railroad.** The territory of Oklahoma received no title to sections 16 and 36 in each township in said territory by the provision of the Organic Act (Act May 2, 1890, c. 182, sec. 18, 26 Stat. 89) reserving said sections for the purpose · of being · applied to the public schools in ·the state or states to be created out of the territory, and could not recover the value of such land appropriated for railway purposes.

2. **EMINENT DOMAIN—School Lands—Compensation to Territory.** The territory of Oklahoma could recover from a railway company that had appropriated a portion of the land reserved for school purposes by the provision of the Organic Act (Act May 2, 1890, c. 182, sec. 18, 26 Stat. 89) the rental value of the land so taken, and for the depreciation in the rental value of the remainder of the tract of land not taken resulting from the construction of the company's railroad over said land, for such a period of time as the territory of Oklahoma was entitled to use said land and collect the rents thereon.

3. **APPEAL—Review—Instructions—Failure to Save Exceptions.** An objection to an instruction to which no exception was saved in the trial court to the giving thereof will not be considered by this court.

(Syllabus by the Court.)

*Error from District Court, Lincoln County; before John H. Burford, Judge.*

Condemnation proceedings by the Choctaw, Oklahoma & Western Railway Company· for right of way over school land. From judgment for $27.90 in District Court the territory brings error. Affirmed.

On the 5th day of September, 1903, the Choctaw, Oklahoma & Western Railway Company filed with the Governor of the territory of Oklahoma its petition for the appointment of commissioners or

appraisers to condemn and appraise certain land lying in the northeast quarter of section 16, township 14 N., range 4 E. of the Indian Meridian, and being a part of the school lands located in the territory of Oklahoma, for the purpose of a right of way of said company's main line of railroad, and for side tracks, grounds, and switches. On the same day the Hon. Thompson B. Ferguson, then Governor of the territory of Oklahoma, made his order appointing commissioners or appraisers as prayed for in the petition of said railway company; and thereafter, on the 12th day of September, 1903, said commissioners or appraisers filed with the Governor of the territory of Oklahoma its report, in which report they assessed the damages which the territory of Oklahoma would sustain by the appropriation of said land for railway purposes by the said Choctaw, Oklahoma & Western Railway Company at the sum of $162. From this award of the commissioners or appraisers the Hon. Thompson B. Ferguson, as Governor, and Wm. Grimes, as Secretary, and L. W. Baxter, as Superintendent of Public Instruction, constituting a board for the leasing of the school lands of the territory of Oklahoma, appealed to the district court of Lincoln county. Thereafter, on the 20th day of October, 1904, the cause was tried before a jury, and verdict returned and judgment rendered in favor of the territory of Oklahoma for the sum of $27.90, from which judgment of the court plaintiff in error appealed.

*Charles West, Atty. Gen.,* and *W. C. Reeves, Asst. Atty. Gen.,* for plaintiff in error.

*C. O Blake, Thos. R. Beman, H. B. Low, Dale & Bierer,* and *Benj. F. Hegler, Jr,* for defendant in error.

HAYES, J. (after stating the facts as above). It was agreed upon the tiral that 3.1 acres of said quarter section of school land had been appropriated by the railway company. Several assignments of error are made by plaintiff in error. The only question, however, presented by said assignments of error and the record

in this case is whether the territory of Oklahoma could recover the value of the 3.1 acres of land appropriated by the railway company and damages for the permanent injury to the remainder of said quarter section by reason of the company's constructing its line of railway and switches on and over same.

The railway company insists that the territory of Oklahoma had no title to the land, was not the owner of the fee in the same, that said land was a part of the public domain of the United States, and that said railway company, having been granted by Act Cong. March 3, 1875, c. 152, § 1, 18 Stat. 482 (U. S. Comp. St. 1901, p. 1568), the right to build its line of railroad through the public domain of the United States, the territory of Oklahoma could not recover in this action. Counsel for the territory of Oklahoma insist that the provision of the Organic Act of the territory of Oklahoma (Act May 2, 1890, c. 182, § 18, 26 Stat. 89) reserving sections 16 and 36 in each township in the territory of Oklahoma for the purpose of being applied to the public schools in the state or states therafter to be erected out of said territory was a legislative grant of said lands to the territory of Oklahoma, and that the territory had such title in said land as would entitle it to recover the value of any part of the same taken by the railway company for the purpose of constructing its line of railway. The trial court sustained the contention of the railway company, and instructed the jury that the only interest the territory had at the time the railway company appropriated said land and at the time of the trial of the case was the right of possession and user for the purpose of collecting the rents, and that such right would continue so long as Oklahoma remained a territory, and no longer, and that the measure of damages which the territory of Oklahoma was entitled to recover was the rental value of 3.1 acres taken by the railway company for its right of way, together with any depreciation in the rental value of the remainder of the quarter section of land by reason of the railway company's constructing its line of the railway thereon from the time the same was taken by the railway

company until such time as the territory of Oklahoma should become a state.

That portion of the Organic Act which reserves sections 16 and 36 in each township reads as follows:

"That sections numbered sixteen and thirty-six in each township in said territory shall be, and the same are hereby, reserved for the purpose of being applied to public schools in the state or states hereafter to be erected out of the same."

Counsel for the territory vigorously insist that title to the public domain, of the United States may pass by legislative grant as well as by patent, and this contention, we think, is true; but this does not answer the question involved in this case. The question is, was there a legislative grant of sections 16 and 36 in each township to the territory of Oklahoma by virtue of the foregoing provision of the Organic Act? If there was, then the territory was vested with the title to said land and could recover for the appropriation of the same. The Supreme Court of Kansas, in *State of Kansas v. Stringfellow,* 2 Kan. 263, construing the provisions of the Organic Act providing for the establishment of territorial government in the territory of Kansas, held that the provision therein reserving certain lands for school purposes was a legislative grant, and passed the title to the territory of Kansas. The section of the Organic Act of the territory of Kansas by which certain lands are reserved for school purposes reads:

"And be it further enacted, that when the lands in the said territory shall be surveyed under the direction of the government of the United States, preparatory to bringing the same into market, sections numbered sixteen and thirty-six in each township in said territory shall be, and the same are hereby, reserved for the purpose of being applied to schools in said territory and in the states and territories hereafter to be erected out of the same."

The Supreme Court of Utah, in *United States v. Lewis A. Scott Elliot,* 7 Utah, 389, 26 Pac. 1117, in construing the school land provision of the Organic Act of the territory of Utah, which provision is in identical language of the provision of the Or-

ganic Act of the territory of Kansas, held that the language of said act reserving sections 16 and 36 in each township was a legislative grant, and that the title in the territory of Utah became complete as soon as the land was surveyed; but the same language has been construed by other courts as not creating a grant, but as having only the effect to segregate the lands described therein from the public domain in so far as the purpose of sale or homestead entry is concerned. *Barkley v. United States,* 3 Wash. T. 522, 19 Pac. 37; *United States v. Bisel,* 8 Mont. 20, 19 Pac. 251. Judge Brewer, now Associate Justice of the Supreme Court of the United States, as United States circuit judge for the Eighth circuit for the district of Nebraska, held in *Union Pacific Ry. Co. v. Douglas Co.,* 31 Fed. 540, that the effect of the provisions of the Organic Act of the territory of Nebraska (Act May 30, 1854, c. 59, § 16, 10 Stat. 283) reserving certain lands for school purposes (the language of which is the same as the corresponding section of the Organic Act of Utah, Washington, Montana, and Kansas) was only that, when such lands had been once reserved by Congress, Congress will not be presumed to have intended a disposal of them in any other way unless the intent is clearly expressed in the act of Congress, and he further held in that case that the grant of Congress to the Union Pacific Railway Company of a right of way by Act Cong. July 1, 1862, c. 120, § 2, 12 Stat. 491, gave to the company a right of way across the school lands of the territory of Nebraska reserved by the provision of the Organic Act of said territory of 1854; thus clearly holding that Congress had such control over the school lands of the territory of Nebraska after they had been reserved for the purpose of being applied to schools in the territory of Nebraska that it could grant to a railway company a right of way over the same.

It is urged by counsel for the territory that the opinion of Judge Brewer in that case is in contradiction with an opinion rendered by him while a member of the Supreme Court of Kansas in *Baker v. Newland,* 25 Kan. 25; but an examination of the facts

show that such is not true. In *Baker v. Newland* the facts were that the land in controversy was a part of the land granted by an act of Congress to the state of Kansas after it was admitted into the Union, and such grant was accepted by the state—a condition entirely different from that existing in the case of *Union Pacific Ry. Co. v. Douglas Co.*, *supra*, and wholly unlike the condition existing in the case at bar.

These five cases are the only cases to which our attention has been called in which the provisions of the Organic Acts of the various territories reserving certain lands to be applied to the public schools of the territories or states to be created therein have been construed, and it thus appears that both the weight and greater number of authorities is to the effect that such reservation of public lands for school purposes does not amount to a grant. But it is not necessary to rest the case at bar upon the opinion of the court in those cases, for the reason that the language of the provision of the Organic Act of the territory of Oklahoma reserving certain lands for school purposes is quite different from the language of the corresponding provisions of the Organic Acts of the territories in which said decisions were rendered. In each of those cases the land was reserved for the purpose of being applied to schools in the territory, whereas by the provision of the Organic Act of the territory of Oklahoma the land is reserved for the purpose of being applied to the schools in the state or states to be thereafter erected out of said territory; and, if such language could be construed as a grant to the state or states thereafter to be erected out of the territory of Oklahoma, the state of Oklahoma would be the grantee, and not the territory of Oklahoma, and therefore the territory of Oklahoma was without title in said lands at the time the railway company appropriated a part of said section 16, and at the time of the trial of this case in the court below.

*Vincennes University v. Indiana,* 14 How. (U. S.) 268, 14 L. Ed. 416, has been cited as supporting the theory that, since there was no state government in existence at the time the land in con-

troversy was reserved for the purpose of being applied to the public schools in the state or states thereafter to be created out of the territory, the territory of Oklahoma could recover for the land taken. A careful examination of the decision of the court in that case, however, does not support the theory in support of which it has been cited by counsel. The territory of Indiana was organized under Act Cong. May 7, 1800, 2 Stat. 58, c 40. On 26th of March, 1804, Congress passed an act (2 Stat. 277, c. 35) providing for the survey and disposal of the public lands, and created three land districts within said territory, and by the provision of said act reserved an entire township in each land district, to be located by the Secretary of the Treasury, for the use of a seminary of learning. The district of Vincennes was organized, and the Secretary of the Treasury located therein a certain township for the use of a seminary in said district. Some two years afterwards Vincennes University was orgaized and incorporated. The Supreme Court of the United States held that upon the establishment of Vincennes University and its incorporation it became possessed of said township of land. The court held in that case that the reservation was in the nature of an executory devise, and no estate vested in any one at the time of the passage of the act reserving said land, but was held in abeyance and vested in the University of Vincennes upon its organization and incorporation. The court used the following language:

"There was no uncertainty in this appropriation. The township was designated and the purpose stated for which it was reserved. And there can be no doubt, from the authorities, that the right vested so soon as a capacity was given to the corporation to receive it. Prior to this it remained in the federal government. This is the settled doctrine on that subject."

Applying this rule to the language of the provision in the Organic Act of the territory of Oklahoma, no estate in the school lands within the territory was vested thereunder in any one until the admission of the state into the Union, at which time the estate therein vested in the state of Oklahoma. The territory of Oklaho-

ma was not the grantee, and no estate in the land was ever vested in it by virtue of the provisions of the Organic Act.

, *Minnesota Mining Co. v. National Mining Co.*, 11 Mich. 186, the opinion in which case was affirmed by the Supreme Court of the United States (3 Wall, 332, 18 L. Ed. 42), has also been cited by plaintiff in error as supporting its theory of the case, but a careful examination of the case fails to sustain its contention. That was an action of ejectment brought by plaintiff, who claimed under a patent from the United States, issued April 9, 1852, upon a pre-emption purchase under Act Cong. March 1, 1847, 9 Stat. 146, c. 32. The patent recited full payment made, but contained an express reservation "of any right which the state of Michigan may have" in and to the lands in section 16 mentioned in the patent under and by virtue of the provision of the first section of Act Cong. June 23, 1836, 5 Stat. 56, c. 117, which act of Congress was the act under which the northern boundary line of the state of Ohio was established, and the state of Michigan was admitted into the Union, and in which act of Congress the section of land involved in that action was reserved and granted to the state of Michigan for school purposes. The state of Michigan accepted the provisions of that act. The court did not rest its decision upon these acts and the acceptance thereof by the state of Michigan, but upon the fact that the land in controversy was expressly reserved by the provisions thereof from the operation of the act of Congress of March 1, 1847, under which plaintiff claimed title to the land.

Since the territory of Oklahoma at the time the land involved in this action was taken by the railway company had no title therein, it could not recover injury to the freehold; but subsequent to the passage of the Organic Act of the territory of Oklahoma an act of Congress was passed which provided that the school lands reserved in the territory by that and former acts of Congress might be leased by the Governor thereof, under regulations to be prescribed by the Secretary of the Interior, for a period

not exceeding three years, for the benefit of the school fund of said territory. The interest of the territory of Oklahoma in said section 16 at the time the railway company built its railroad thereon was such an interest as was given by the provision of said act and was in the nature of the interest of a tenant at will, whose term would not extend beyond the time of the admission of the state into the Union; and the measure of the plaintiff in error's damages for its interest taken by the railway company was the rental value of such land taken, and the damages, if any, to the rental value of the remaining portion of said quarter section of land not taken for the term plaintiff in error would be entitled to the use of the same, which could not extend beyond the time of the admission of the state into the Union. The trial court, upon the measure of damages which plaintiff in error might recover, gave the following instruction:

"The land in controversy in this case is a portion of the northeast quarter of section 16, township 14 N., range 4 E., and is what is usually known as school lands. The title to this land is in the government of the United States, and the territory has no authority to deal with the title, or to compensation for the land itself. By act of Congress the territory is given the authority to rent this land and to use the rentals received therefrom for the support of the public schools. The land itself is reserved for the future state which may be created and embrace the land in dispute. The only interest the territory had at the time the railroad appropriated its right of way across this land or has at this time is the right of possession or user for the purpose of collecting the rentals, and this right will continue so long as Oklahoma remains a territory, and no longer. When we become a state, Congress will donate or grant these lands to the state, and the title will then pass to the state, and the disposition of the land will be subject to the state laws. How long we will yet remain a territory you will have to approximate by taking into consideration our population, wealth, improvements, and general advancement and the probable action of the Congress of the United States as shown from its past history, as well as your general knowledge of the present status of the statehood measure pending before Congress as appears from general notoriety."

Counsel for the territory devote a great portion of their brief to a discussion of this instruction, and in insisting that it was error; but an examination of the record discloses that no exception was made to this instruction in the court below, and this court will not consider whether a given instruction is erroneous when no exception was saved to the giving thereof at the time of the trial. *Sparks v. Territory,* 16 Okla. 127, 83 Pac. 712; *Metz et al. v. Winne et al.,* 15 Okla. 1, 79 Pac. 223; *Glasser et al. v. Glasser et al.,* 13 Okla. 389, 74 Pac. 944.

It is the order of this court that the judgment of the lower court be affirmed

All the Justices concur.